COMMONWEALTH OF PENNSYLVA-
NIA et al.

v.

Joseph R. RIZZO, Fire Commissioner,
et al.

Appeal of FIRE OFFICERS UNION
et al.

Nos. 75–1236, 75–1332.

United States Court of Appeals,
Third Circuit.

Argued Oct. 14, 1975.

Decided Jan. 21, 1976.

Certiorari Denied June 7, 1976.
See 96 S.Ct. 2628.

502

Steven E. Angstreich, I. Raymond Kremer, Kremer, Krimsky, & Luterman P.C., Yale B. Bernstein, Stanley Bashman, Bashman, Deutsch, & Bernstein, P.C., Philadelphia, Pa., for appellants.

Robert P. Vogel, Asst. Atty. Gen., Philadelphia, Pa., Robert P. Kane, Atty. Gen., Harrisburg, Pa., for Commonwealth of Pennsylvania.

Michael L. Golden, Jr., Robert J. Reinstein, James M. Penny, Jr., Asst. City Sol., Law Dept., Stephen Arinson, Chief Deputy City Sol., Sheldon L. Albert, City Sol., Philadelphia, Pa., for individual appellees.

Before ALDISERT, FORMAN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The Fire Officers Union and several individual firemen and officers filed two appeals, here consolidated, from a proceeding which challenged the employment practices of the Philadelphia Fire Department as racially discriminatory. No. 75–1332 seeks review of the district court's denial of appellants' motion to intervene of right pursuant to F.R.Civ.P. 24(a)(2). No. 75–1236 seeks review on the merits of the district court's orders requiring institution of new written promotion examinations and imposing interim minority promotion quotas. We affirm the denial of intervention at No. 75–1332 on the ground that the district court did not abuse its discretion in concluding that appellants' motions to intervene were untimely. We dismiss the appeal at No. 75–1236 on the ground that only a party of record in the district court may appeal.

### I.

The genesis of these proceedings was a class action complaint filed January 31, 1974, by Club Valiants, Inc., an organization of black Philadelphia firefighters, by the Commonwealth of Pennsylvania, and by certain individual black firefighters, alleging that the employment practices of the Philadelphia Fire Department were racially discriminatory in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Civil Rights Acts of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, and the Thirteenth and Fourteenth Amendments to the United States Constitution. The complaint named as defendants the Mayor and Fire Commissioner of Philadelphia, as well as various other city officials responsible for formulation and implementation of the Fire Department's employment practices. Plaintiffs requested extensive equitable relief, including the institution of interim hiring and promotion quotas as remedies for discrimination.

Extensive pretrial activity followed. After discovery and the disposition of

several motions, the district court held an evidentiary hearing on plaintiffs' motion for a preliminary injunction with respect to hiring. On July 26, 1974—after eight days of testimony—the court granted the motion finding that hiring discrimination existed and that its continuance would result in irreparable harm to the plaintiffs. The court ordered defendants to develop racially neutral selection procedures; until such procedures were implemented, the defendants were preliminarily enjoined from hiring any new firefighters unless the hiring was from the current eligibility list in the ratio of one qualified minority for every two qualified whites. On August 5 the court entered an order directing that all discovery be completed by November 1, establishing dates for filing of pretrial memoranda and exchange of documents, and setting December 2 as the date for final hearing.

Discovery was concluded in early November. Later that month plaintiffs filed their pretrial memorandum, but the final hearing scheduled for December 2 was continued and a series of settlement conferences were held instead. The parties resolved the claims of the individual plaintiffs but other issues, including the question of promotions, could not be resolved. During the settlement conferences, the defendants informed the court that, because of a new fourth platoon in the Philadelphia Fire Department, a number of promotions had to be made before the end of the year. Plaintiffs filed a motion for an injunction *pendente lite* requesting that these promotions be enjoined unless a certain percentage of those promoted were minorities. On December 27, 1974, the district court granted that motion and entered an order specifying the racial composition of promotions to be made on December 30: 1 of 5 promoted to Deputy Chief would be a qualified minority; 2 of 15 promoted to Battalion Chief would be qualified minorities; 3 of 15 promoted to Captain would be qualified minorities; and 8 of 53 promoted to Lieutenant would be qualified minorities. The promotions were made as ordered. The final hearing was rescheduled for January 7, 1975.

On December 30 several individual white firemen on the Lieutenant promotion list moved to intervene. The Fire Officers Union and several individual officers on various promotion lists moved to intervene on January 6. Local Rule 36 of the Eastern District of Pennsylvania requires notice of five business days for all contested motions. Because the proposed intervenors' original motions did not conform to that rule, they filed a joint amended motion on January 23 seeking intervention of right pursuant to F.R.Civ.P. 24(a).

The final hearing took place as scheduled on January 7. Individual claims were formally settled by stipulation. The parties also stipulated to the introduction of evidence and to the testimony certain witnesses would give if called. The court made findings of fact and conclusions of law and entered a final order disposing of all unresolved issues. The final order provided relief in two primary areas, hiring and promotion. Defendants were ordered to develop and implement valid, racially neutral tests and procedures for hiring and promotion. In the interim, the court enjoined defendants from hiring or promoting unless certain quotas were fulfilled. New firefighters were to be hired from the current eligibility list in the ratio of one qualified minority for every two qualified whites. At least 15 per cent of the firefighters promoted to the ranks of Lieutenant and Captain were to be eligible minorities. Two qualified minorities were to be promoted to Battalion Chief when promotions to that rank were next made; one qualified minority was to be promoted to Deputy Chief when promotions to that rank were next made. The final order also treated the issue of assignments within the Fire Department; awarded costs and attorneys fees; and ordered periodic reporting by the defendants detailing the implementation of the order.

On February 5, the proposed intervenors filed an appeal on the merits from the promotion aspects of the district court's orders (No. 75–1236), fearing that their appeal might be untimely if they

waited for the court to rule on their intervention motions. On March 5 the court denied their motions; the proposed intervenors filed their appeal from that denial on April 2 (No. 75–1332). The two appeals have been consolidated.

## II.

■ Appellants have asserted a right to intervene under F.R.Civ.P. 24(a)(2). "When an absolute right to intervene in a lawsuit is claimed, and the claim is rejected, the order denying intervention is considered final and appealable." *Philadelphia Electric Co. v. Westinghouse Electric Corp.,* 308 F.2d 856, 859 (3d Cir. 1962), *cert. denied,* 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963). We do not follow the older rule which made appealability turn on whether the appellant had, in fact, a right to intervene. "Since [such a rule] makes appealability turn on the merits, it is not a very effective or useful limitation of appellate jurisdiction; the propriety of the denial by the district judge must be examined before the appellate court knows whether it has jurisdiction, and the only consequence of the restriction on appealability is that on finding the district judge was right, it will dismiss the appeal rather than affirm." *Levin v. Ruby Trading Corp.,* 333 F.2d 592, 594 (2d Cir. 1964) (Friendly, J.) (quoted in 7A C. Wright & A. Miller, Federal Practice and Procedure § 1923, at 627 (1972)). It is sufficient that intervention of right was sought and denied to render the denial appealable.

Rule 24(a)(2) F.R.Civ.P. provides:

(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ The question whether appellants were entitled to intervene of right depended on their satisfying the district court in three respects: first, that they had a sufficient interest in the matter, and that their interest would be affected by the disposition; second, that their interest was not adequately represented by the existing parties; and third, that their application was timely. Although appellees have argued to the contrary (Appellees' Brief at 28), we may assume that appellants satisfied the first test, the interest test. Appellants assert that they also satisfied the other tests: "Appellants submit that they acted timely, that their interests were not being represented by defendants and that they, therefore, had an absolute right to intervene." (Appellants' Brief at 6–7).

The principal thrust of the argument before this court—both by brief and oral argument—was that appellants delayed filing their intervention motion because they were lulled into non-action by misrepresentations by counsel for the public defendants, officers of the City of Philadelphia, that the case was being vigorously defended when, in fact, it was not. Appellants argue, in effect, that any tardiness on their part ought to be excused because it resulted from deception practiced upon them by defendants' counsel. Thus, although the ultimate issue in this appeal is the timeliness of the intervention motion, this court should address the question whether defendants' counsel misrepresented the adequacy and vigor of the defense conducted. If they did, then that fact ought to be considered in evaluating the timeliness of appellants' intervention motion.

### A.

Appellants contest the district court's conclusion that "the rights of all firemen and officers to promotion within the Fire Department were adequately and fully protected by the City of Philadelphia and the Philadelphia Fire Department throughout the course of this litigation." (App. 1780a). Distilled to its essence, it is the appellants' contention that they reasonably believed the existing defendants were vigorously defending their interests in the promotion aspects of the

case until December 27; on that date, the defendants agreed to the order imposing promotion quotas and the appellants suddenly realized that their interests were not being defended. Appellants moved quickly to intervene, their argument continues, but the defendants—who had assured appellants that no agreements had been reached as to promotions—promptly settled the case on January 7, the settlement resulting in promotion quotas bypassing certain appellants. Appellants contend that defendants abandoned their interests, at least as of December 27. We disagree.

 Initially, we note that, notwithstanding the liberalizing 1966 amendment of Rule 24(a), the burden of establishing inadequate representation—though the burden "should be treated as minimal"—remains on the proposed intervenor. *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). Furthermore, a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee. 7A C. Wright & A. Miller, Federal Practice and Procedure § 1909, at 528–29 (1972); *see Sam Fox Publishing Co. v. United States,* 366 U.S. 683, 689, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961) (dictum). All defendants here fit that mold. Where official policies and practices are challenged, it seems unlikely that anyone could be better situated to defend than the governmental department involved and its officers.

 Our independent examination of the record does not support appellants' contention that defendants agreed to the injunction *pendente lite* of December 27, 1974, nor have appellants cited any record references where this appears. The district court did not characterize the injunction as a consent decree: "On December 27, 1974, upon consideration of plaintiffs' motion for an injunction *pendente lite,* the Court entered an Order specifying the racial composition of promotions to be made by the Fire Department on December 30, 1974." (App.

1775a). Even if the injunction had been characterized as a consent decree, inadequate representation would not be established *ipso facto*; any case, even the most vigorously defended, may culminate in a consent decree. As the Seventh Circuit has observed, a consent decree may be simply "the inescapable legal consequence of application of fundamental law to [the] facts. That [intervenors] would have been less prone to agree to the facts and would have taken a different view of the applicable law does not mean that the [defendants] did not adequately represent their interests in the litigation." *United States v. Board of School Commissioners,* 466 F.2d 573, 575 (7th Cir. 1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973).

Appellants' additional contention, pressed vigorously at oral argument, that defendants' counsel lulled them into a belief that the final hearing was to be contested when in fact it was not, requires inquiry into the adversary nature *vel non* of the final hearing. Examination of the record on this point also lends no support to appellants. There was agreement as to the procedures governing reception of evidence, but not as to the substantive results of the hearing. Thus, on January 7, the district court commented:

> The record should note that there has been a hearing on a portion of the case and the court has rendered its decision on a portion of the case which was filed by order in August of 1974. The remaining feature of the case having to do with promotions has been the subject of a series of submissions by counsel of proposed stipulations and exhibits and agreed testimony, that is, agreed to the extent that the parties have agreed that if certain persons did appear they in fact would testify as outlined in certain exhibits.

(App. 1741a).

Moreover, another comment of the district court on the same day discloses no question in its mind concerning the vigor of advocacy on both sides:

The Court: I would also like to make clear at this time that as far as the court is concerned, aside from one or two what the court considered to be minor differences and minor misunderstandings, primarily both sides of this case have advanced their clients' cause with vigor and in the highest keeping of the legal profession as practiced in the United States courts . . ..

(App. 1753a).

■ We therefore reject appellants' contention that the lateness of their intervention motion ought to be excused because of misrepresentations concerning the adequacy and vigor of opposition to the promotion aspects of the December 27 injunction and the January 7 final order. The record demonstrates that both the injunction and the order emanated from adversary litigation. We also reject any implied contention that representation becomes inadequate whenever the representative is unsuccessful in urging a position: adequate representation may or may not be successful representation.

### B.

*NAACP v. New York,* 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602, 37 L.Ed.2d 648 (1973), explained the timeliness criterion of Rule 24:

Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be "timely." If it is untimely, intervention must be denied. Thus, the court where the action is pending must first be satisfied as to timeliness. Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review.

(Footnotes omitted.)

■ The Eighth Circuit recently summarized several factors which ought to inform the district court's discretion in determining whether a motion to intervene is timely under "all the circumstances":

■ [H]ow far the proceedings have gone when the movant seeks to intervene, *NAACP v. New York, supra,* 413 U.S. at 367–368, 93 S.Ct. 2591 [37 L.Ed.2d 648]; *Iowa State University Research Foundation v. Honeywell, Inc.,* 459 F.2d 447, 449 (8th Cir. 1972), ■ prejudice which resultant delay might cause to other parties, *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1125–1126 (5th Cir.), cert. denied, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970); *Kozak v. Wells,* 278 F.2d [104] at 109 [(8th Cir. 1960)], and [3] the reason for the delay, *Iowa State University Research Foundation v. Honeywell, Inc., supra,* 459 F.2d at 449.

*Nevilles v. EEOC,* 511 F.2d 303, 305 (8th Cir. 1975). These three factors provide a useful framework for our review of the district court's exercise of discretion in denying intervention as untimely.

■ When appellants filed their third and only procedurally proper motion on January 23, the proceedings had already been concluded and the final order of January 7 entered. Furthermore, as the district court commented in its memorandum and order denying intervention:

[T]he first petition for leave to intervene was filed three days after the injunction *pendente lite* was granted and seven days prior to the entry of the Court's final Order. The second application for intervention was made the day before the final Order was entered in this case. It must also be noted that the motions for intervention were filed almost a full year after the filing of the complaint and five months after the hearing and decision on plaintiffs' motion for a preliminary injunction.

(App. 1778a).

With regard to the prejudice which the resultant delay might cause to other parties, the district court commented:

To allow intervention at this stage of the case would result in serious preju-

dice to the rights of the plaintiffs and the Philadelphia Fire Department. Extensive discovery has been undertaken and completed, all critical issues have been resolved, and a final Order has been entered. The interest in basic fairness to the parties and the expeditious administration of justice mandates the denial of the motion to intervene.

(App. 1780a).

Appellants seem to assert two reasons, somewhat inconsistent, for their delay in moving to intervene. First, they argue that, until December 27, they reasonably believed that their interests were being adequately represented. Second they contend that, until December 27, they reasonably believed that their interests were not even implicated in the proceedings because they understood that the matter of promotions was to remain in *status quo.* In either event, they point out that they moved promptly to intervene after December 27.

Having already decided the issue of adequacy of representation adversely to appellants, we need not rehearse that matter here. With regard to appellants' misunderstanding about the promotion aspects of the case, we note that the complaint, by its terms, addressed the whole spectrum of employment practices in the Fire Department and that the litigation engendered interest and publicity in Philadelphia. Even if we might justify tardy intervention in cases where the litigation or its progress was concealed from potential intervenors, we find no such concealment here. In concluding the motions to intervene were untimely, the district court stated:

> [T]he intervenors cannot reasonably claim that they were unaware of the filing of the complaint, the granting of the preliminary injunction, or the pendency of the proceedings that ultimately culminated in the entry of the final Order on January 7, 1975. There was continuous and extensive media coverage of the nature and scope of the instant litigation, including, but not limited to, newspaper articles appearing in the Philadelphia Inquirer,

Bulletin and Daily News. In February, 1974, copies of the complaint in this action were circulated by departmental mail to fire stations throughout Philadelphia. An affidavit submitted by Ronald Lewis, the past president of the Club Valiants, Inc., (a plaintiff herein) shows that discussions were held with individual members of the Fire Officers Union concerning the likelihood of suit and the nature of the relief sought.

> Petitioners had every opportunity to intervene in this law suit. The nature of the relief sought and granted in connection with the plaintiffs' motion for preliminary injunction should have alerted the petitioners to the likely necessity for intervention. The applicants failed to exercise their right to intervene in this action. The Court concludes, therefore, that the applications for intervention are untimely.

(App. 1778–79a). We find no abuse of discretion in that conclusion. Accordingly, we affirm the denial of intervention at No. 75–1332.

### III.

■ Appellants have appealed the merits of the district court's orders—insofar as promotions were involved—in No. 75–1236. The general rule is that only a party of record in the district court may appeal from the judgment of that court. *Credits Commutation Co. v. United States,* 177 U.S. 311, 20 S.Ct. 636, 44 L.Ed. 782 (1900); *Payne v. Niles,* 61 U.S. (20 How.) 219, 15 L.Ed. 895 (1857); 9 J. Moore & B. Ward, Federal Practice ¶ 203.06, at 715 (2d ed. 1975).

> [I]t has long been the law, as settled by this court, that "no person can bring a writ of error [an appeal is not different] to reverse a judgment who is not a party or privy to the record," *Bayard v. Lombard,* 9 How. (50 U.S.) 530, 551, 13 L.Ed. 245, 254 and in *Ex parte Tobacco Board of Trade,* 222 U.S. 578, 32 S.Ct. 833, 56 L.Ed. 323, it was announced, in a *per curiam* opinion, as a subject no longer open to discussion, that "one who is not a party to a record and judgment is not

508

entitled to appeal therefrom,"
. . . .
*United States ex rel. Louisiana v. Jack,*
244 U.S. 397, 402, 37 S.Ct. 605, 607, 61
L.Ed. 1222 (1917).

■ Consonant with the general rule,
we have held that one properly denied
the status of intervenor cannot appeal on
the merits of the case. *Hoots v. Commonwealth of Pennsylvania,* 495 F.2d
1095 (3d Cir.), *cert. denied,* 419 U.S. 884,
95 S.Ct. 150, 42 L.Ed.2d 124 (1974). Accordingly, the appeal at No. 75–1236 will
be dismissed.

IV.

■ Appellants have petitioned this
court for an order compelling the appellee Commonwealth of Pennsylvania to
pay $4,628.35, of the total cost of
$6,144.20, for production of the 1898-
page appendix filed in this appeal. Conceding that the parties might have been
more selective in compiling the appendix,
we nevertheless do not find the kind of
abusive and unnecessary inclusions that
would warrant the imposition of production costs on appellee pursuant to F.R.
App.P. 30(b). We are mindful that appellants challenged, albeit unsuccessfully,
not only the denial of intervention but
also the merits of the district court's orders of December 27 and January 7:
they alleged that the order of December
27 was not supported by any credible
evidence, and that the order of January
7 was contrary to the weight of the evidence. (Appellants' Brief at 13 & 15).
Such allegations, by their nature, contemplate comprehensive appellate review
of the record. Accordingly, we deny the
petition.

The judgment of the district court denying intervention, appealed at No. 75–
1332, will be affirmed. The appeal at
No. 75–1236 will be dismissed. Costs
taxed against appellants.