**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1117
_____

CRYSTALLEX INTERNATIONAL CORPORATION

v.

BOLIVARIAN REPUBLIC OF VENEZUELA

RED TREE INVESTMENTS, LLC,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:17-mc-151)
District Judge: Honorable Leonard P. Stark
_____

Submitted Under Third Circuit L.A.R. 34.1(a) on September 13, 2023

Before: JORDAN, BIBAS, and PORTER, *Circuit Judges*

(Filed: July 9, 2024)

_____

OPINION*
_____

**PORTER**, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

Red Tree Investments, LLC ("Red Tree") filed a motion to intervene so that it could participate in the sale of shares of a subsidiary of the Venezuela government. Because its motion to intervene is untimely, we will affirm.

I

Crystallex International Corporation ("Crystallex") is a Canadian gold mining company. It acquired the rights to explore and develop gold deposits in Venezuela, but those rights proved useless after the Bolivarian Republic of Venezuela ("Venezuela") expropriated Crystallex's property in 2011. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F. 3d 126, 133 (3d Cir. 2019). In 2017, a federal court in the District of Columbia entered a $1.2 billion judgment, plus interest, in favor of Crystallex and against Venezuela. *Crystallex Int'l Corp v. Bolivarian Republic of Venezuela*, 760 F. App'x 1, 2 (D.C. Cir. 2019). As we have explained twice before, "Crystallex seeks to auction shares owned by Venezuela's state-owned energy company, Petróleos de Venezuela, S.A. ('PDVSA'), to satisfy its judgment." *Crystallex*, 932 F.3d at 132.[1] These shares are blocked by regulatory sanctions imposed by the United States through the Treasury Department's Office of Foreign Assets Control ("OFAC"). A license from OFAC is required to attach or transfer the shares.

---

[1] PDV Holding, Inc. ("PDVH") is a wholly owned subsidiary of PDVSA. CITGO Petroleum Corporation ("CITGO") is a wholly owned subsidiary of CITGO Holding, Inc., which is a wholly owned subsidiary of PDVH. Together these are the "Venezuela Parties." Both the Venezuela Parties and Crystallex filed reply briefs and are referred to as "Venezuela Rep. Br." and "Crystallex Rep. Br.," respectively.

Meanwhile, Red Tree has been litigating its own claims for recovery on approximately $260 million of debts owed to it by PDVSA since February 2019. *Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, No. MC 22-68-LPS, 2022 WL 1265516, *1 (D. Del. Apr. 28, 2022). Red Tree secured final judgment in its favor on January 6, 2022. *Id.* One month later, Red Tree registered its judgments in the District of Delaware, the forum where Crystallex's judgment enforcement proceeding is pending. *Id.* In April 2022, Red Tree obtained a "conditional attachment[]" over the shares. Opening Br. 19–20.

In May 2021 the District Court appointed a special master to structure the sale of the PDVH shares. To fulfill its mission, the Special Master filed seven proposed sale procedures orders. The last of these, the October 2022 Sale Procedures Order, provides that only Crystallex, the Venezuela Parties, and ConocoPhillips are "Sale Process Parties," who may exercise consultation rights over the sale process not available to the other judgment creditors.[2]

The "Sale Procedures Order" provides a separate mechanism for "additional judgments" to be considered by the Special Master for purposes of the sale. App. 740–41. To have their judgment considered and benefit from this mechanism, a creditor holding an additional judgment must become an "Additional Judgment Creditor" by agreeing to

---

[2] These rights include the right to consult on potential bidders, to object to any modifications to the bidding procedures, to move the District Court to select a bid for the shares, to object to the Special Master's recommended bid, and to propose a list of bidders to the Special Master.

"shar[e]" the Special Master's fees and costs with the Sale Process Parties going forward. App. 751.

Red Tree moved to intervene on November 4, 2022. Critically, its motion asked the District Court to "modif[y]" the Sale Procedures Order to make it a "Sale Process Party." App. 764. Red Tree moved to intervene so that it could gain the consultation rights that "Sale Process Party" status offers. It requested this to have "full input into the PDVH sale[.]" App. 770. But it sought access on the condition that it paid a lower, pro rata share on a prospective basis—predicated on the size of its judgment against PDVSA—instead of the approximately $1.2 million per capita share that Crystallex, ConocoPhillips, and the Intervening Bondholders had already paid.

The District Court denied Red Tree's motion as untimely. The Court observed that "Red Tree identifies no meritorious reason for its delay" despite its recognition of "the potential impact of this [Delaware] proceeding on its ultimate efforts to collect as far back as 2019[.]" App. 3 & n.2. The Court noted that it had "repeatedly and openly invited input on the sale process," which was "intended to facilitate Crystallex's recovery, including from non-parties such as Red Tree." App. 3.

The Court also held that given "the time and other resources the Court and the Sale Process Parties have devoted to refining and finalizing the Sale Procedures Order, allowing Red Tree to intervene (and potentially seek to modify) the Sale Procedures Order at this point would prejudice Crystallex[.]" App. 4. By contrast, the Court was "confident that Red Tree [would] not be seriously harmed by the denial of its motion" because its interests could "be fully protected by seeking to become an Additional

4

Judgment Creditor[.]" *Id*. The Court explained that holding otherwise would "make an already challenging process even more unwieldy and impracticable." App. 5.

As additional support, the District Court identified "[t]wo further considerations" supporting denial of Red Tree's motion. *Id.* First, the District Court agreed with the Special Master that Red Tree already "had ample opportunity to seek inclusion as a Sale Process Party prior to the Court's entry of the Sale Procedures Order[.]" *Id.* (internal quotation marks omitted) (quoted source omitted). Second, if Red Tree's motion were granted, the Court found that "it would be equitable" to "require Red Tree to pay an equal, per capita share of the Special Master's fees and expenses" as the other Sale Process Parties had done. *Id.* Because "[a]ll indications are that Red Tree is unwilling to pay this fair share," this was an additional basis to deny the motion. *Id.*

Red Tree appealed.[3]

## II

We review a denial of a motion to intervene for abuse of discretion. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 n.26 (3d Cir. 2010). But our review distinguishes between mandatory and permissive interventions. Fed. R. Civ. P. 24(a), (b). Our review of mandatory interventions is "more stringent than the abuse of discretion review we apply to a denial of a motion for permissive intervention" as we are "reluctant to intrude into the highly discretionary decision of whether to grant permissive intervention." *Brody*

---

[3] We have jurisdiction under 28 U.S.C. § 1291 because a district court's denial of a motion to intervene is a final, appealable order. *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995).

5

*ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992) (citation omitted) (internal quotation marks omitted). For review of denials of a motion to intervene as of right, our review is indeed "more stringent" and we will reverse only "if the district court has applied an improper legal standard or reached a decision we are confident is incorrect." *Id.* (citations and internal quotation marks omitted). We may affirm on any basis supported by the record. *FDIC v. Deglau*, 207 F.3d 153, 166 (3d Cir. 2000).

## A

The District Court did not abuse its discretion. Red Tree's motion to intervene, both as of right and permissively, was untimely. The District Court's further consideration of the lack of prejudice to Red Tree and Red Tree's unwillingness to pay on a per capita basis, while not controlling, also reinforces its conclusion that the motion should be denied.

## 1

To intervene as of right under Fed. R. Civ. P. 24(a)(2), Red Tree must show four elements: (1) "a timely application for leave to intervene," (2) "a sufficient interest in the litigation," (3) "a threat that the interest will be impaired or affected . . . by the disposition of the action," and (4) "inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (citations omitted). In applying this framework "pragmatism is a substantial factor[.]" *Id.* at 970. Although these elements are "intertwined," each must be met. *United States v Territory of Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014).

6

Red Tree's untimeliness is fatal to its motion to intervene. *See, e.g.*, *Pennsylvania v. Rizzo*, 530 F.2d 501, 506 (3d Cir. 1976) ("Whether intervention be claimed of right or as permissive . . . the application must be 'timely.' If it is untimely, intervention must be denied") (quoting *NAACP v. New York*, 413 U.S. 345, 365 (1973)). We have identified three factors that provide a "useful framework" for assessing timeliness: (1) "[h]ow far the proceedings have gone when the movant seeks to intervene," (2) "prejudice which resultant delay might cause to other parties," and (3) "the reason for the delay." *Rizzo*, 530 F.2d at 506 (quoted source omitted) (collecting cases). And "delay should be measured from the time the proposed intervenor knows or should have known of the alleged risks" to his rights. *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 950 (3d Cir. 2012) (citation omitted).

a.

The parties agree on when their judgments against PDVSA were entered and when the District Court appointed a Special Master, but they disagree on which dates matter for assessing "how far the proceedings have gone." *Rizzo*, 530 F.2d at 506. On the one hand, Crystallex argues that because the District Court and Special Master have worked to design sale procedures for several years, Red Tree cannot enter negotiation so late in the process. On the other hand, Red Tree argues that it moved swiftly after securing its judgment and conditional attachment to vindicate its interests. The current action was filed in 2017, and the Sale Procedures Order is on its seventh iteration. At the very least and as the District Court found, Red Tree's public filings reveal that it was aware of how Crystallex's action might threaten Red Tree's recovery "since at least August 2019[.]"

7

App. 3. The District Court did not abuse its discretion by finding this proceeding "at an advanced stage." *Id.*

b.

Red Tree offers no persuasive reason for its delay. There is no basis for Red Tree's counterargument that the Sale Procedures Order started a new "stage of the proceeding." True, we have held that parties whose motions are denied at one stage of a proceeding may try again and succeed at a later stage. *Benjamin*, 701 F.3d at 949–55. But the *Benjamin* Court granted a successive motion to intervene "with respect to th[e] remedy stage of th[e] proceeding." *Id.* at 950. The intervenors of *Benjamin* were powerless to reach back to the liability stage and alter its outcome. *See also Janusziewicz v. Sun Shipbuilding & Dry Dock Co.*, 677 F.2d 286, 293 (3d Cir. 1982) (holding that a motion to intervene is proper where it "affect[ed] only the final calculation of damages").

By contrast, the two phases Red Tree suggests—before and after confirmation of the final Sale Procedures Order—involve the same questions about the contours, timing, and consequences of the sale process. And many of these components of the sale process, components that have been litigated for several years, remain undecided. While the Sale Procedures Order's existing terms have play in their joints, the Order itself can be modified with consultation of the Sale Process Parties. So if Red Tree were made a Sale

8

Process Party it could relitigate decided issues. In sum, the Sale Procedures Order does not cleave the sale into two distinct stages.[4]

For the first for the time on appeal, Red Tree offers a second reason for its delay—its need for a judgment against PDVSA. Below, it argued that its interest as a creditor sufficed. Neither position helps Red Tree.

First, Red Tree could have inferred that it did not need a judgment. In December 2019, months after Red Tree had indicated in another proceeding that it was aware of PDVH share auction, the District Court granted intervention as of right to several parties who did not hold judgments. Red Tree points to *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995), where we held that "[i]n general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." Red Tree argues that without a judgment it only has a general economic interest in the scope of its recovery as a creditor. But the intervenor's prejudgment interest in *Mountain Top* was sufficient because it was in "a particular fund" that could be drained by a different proceeding than the one he was litigating. *Mountain Top*, 72 F.3d at 366–67. Here, as a creditor, Red Tree could have at least asked to intervene in the particular fund of PDVH's shares, even without having a judgment in

---

[4] Red Tree also cites *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016), arguing that we found the intervention there timely "because the circumstances giving rise to the need to intervene did not occur until late in the case." Opening Br. at 14. This is a strained reading. The motion to intervene at issue in *Wallach* challenged an argument that the other party had not raised during five years of litigation, despite the opportunity to do so. *Wallach*, 837 F.3d at 378. Red Tree moves to intervene on an issue—its potential status as a Sale Process Party—that was known by all parties since the sale process began. Rather than support Red Tree's position, *Wallach* undermines it.

hand. Plus, Red Tree could have asked for permissive intervention while waiting for its judgment.

Second, Red Tree argues that it worked "diligently to protect its rights" after obtaining its judgment. Opening Br. at 19. Assuming Red Tree did need a judgment, it still waited until ten months after it secured its judgment against PDVSA to move to intervene. *See, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litg.*, 134 F.3d 133, 140 n.1 (3d Cir. 1998) (upholding denial of intervention after four-month delay). Red Tree points to its communications with the Special Master about joining the sale process after obtaining its judgment. The details of these communications are unclear from the record, and in any event directed to the wrong decisionmaker. A motion to intervene is filed with the district court, not the appointed official managing the sale. Red Tree's opaque communications with the Special Master are thus irrelevant.[5]

As a fallback, Red Tree argues that it could not intervene until it secured an attachment. But Red Tree still lacks an attachment. Instead, it has a "conditional attachment," or an order noting that the district court intends to grant it an attachment in the future. *See Red Tree Invs.,* 2022 WL 1265516, at *1 ("the Clerk of Court is directed ***not*** to issue or serve the writ of attachment until further order of the Court") (emphasis in

---

[5] Red Tree relies on *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174 (3d Cir. 1994), arguing that it supports mandatory intervention if a party, via informal communication, "takes reasonable steps to protect its interest[.]" *Id.* at 1182. But in the very next paragraph of its decision the *Alcan* Court explained that the intervenor's steps were "reasonable" because the opposing party's counsel mistakenly assured it that a pending consent decree would not extinguish its rights. *Id.* Red Tree does not allege such assurance by either the District Court or the Special Master here.

10

original). Plus, lack of an attachment did not bind Red Tree's hands. It could have accepted invitations from the District Court for parties and non-parties to provide input into sales procedures but chose not to do so.

c.

Making Red Tree a Sale Process Party would prejudice all involved in the sale by enabling it to relitigate settled issues. Questions such as whether any affected creditor may participate in the sale process, whether to impose minimum bidder requirements, and whether credit bidding should be permitted have already been resolved by the Special Master and current Sale Process Parties. By seeking the "same rights and responsibilities towards the sale process as Crystallex," Red Tree could place these matters back on the table after years of litigation. Crystallex Rep. Br. 38–39.

Anticipating the prejudice intervention will cause, Red Tree argues for the first time on appeal that it should be permitted to intervene and become a Sale Process Party that is prohibited from modifying the Sale Procedures Order's rules. This argument produces a contradiction. Trivially, making Red Tree a Sale Process Party would require modifying the order, as Red Tree's motion acknowledges. Indeed, Red Tree's motion to intervene requested "the same rights and responsibilities towards the sale process as Crystallex and ConocoPhillips." App. 764. Red Tree still seeks Sale Process Party status, and that status confers the right to modify the Sale Procedures Order. Red Tree cannot now rewrite its motion to pick and choose between different rights thereby creating a novel, second-class Sale Process Party status that it alone would possess.

11

Granting Red Tree's motion to intervene also threatens to prejudice Crystallex and other parties to the sale by opening the floodgates. If Red Tree could intervene at this late stage in the proceedings, other creditors would move to intervene as well to secure the procedural rights given to Sale Process Parties. As the District Court predicted, creating additional Sale Process Parties threatens to "make an already challenging process even more unwieldy and impracticable." App. 5.

All three of *Rizzo*'s timeliness factors cut against Red Tree's motion for intervention. 530 F.2d at 506. So we cannot say that we are "confident" the District Court abused its discretion by denying the motion. *Territory of Virgin Islands*, 748 F.3d at 519. Because Red Tree's motion was untimely, we need not consider the other *Kleissler* elements. *Id.* The District Court correctly declined Red Tree's motion to intervene as of right.

2

For a court to grant a motion on permissive intervention, the motion must be timely. Fed. R. Civ. P. 24(b)(1). We give greater deference to the district court's discretion than when reviewing motions to intervene as of right. *Brody*, 957 F.2d at 1115. Indeed, "a denial of a motion for permissive intervention has virtually never been reversed." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 227 (3d Cir. 2005) (internal quotation marks omitted) (quoted source omitted).

Red Tree's untimeliness in its motion for mandatory intervention applies with equal force to its motion for permissive intervention. *NAACP v. New York*, 413 U.S. at 365. Because the District Court correctly concluded that its motion to intervene as of

12

right was untimely, Red Tree's motion for permissive intervention was properly denied as well.

B

The District Court's "[t]wo further considerations" also support our holding. App. 5. First, Red Tree retains alternatives. It can choose to become an "Additional Judgment Creditor." App. 751. And, like any other party, it can file amicus submissions and provide its input there.

Second, Red Tree's refusal to pay a pro capita share of the Special Master's expenses along with the other Sale Process Parties offers more reason to deny its motion. Red Tree argues that the District Court should have split this fee issue from its motion to intervene analysis.[6] But Red Tree could have asked, in the alternative, to intervene on whatever terms the District Court deemed fair. Rule 24 provides ample authority to movants to place conditions on their intervention, and Red Tree chose to seek special treatment in its initial motion, reply briefs below, and briefs before this court. It was well within the District Court's discretion to conclude that this tactical error also supports denying Red Tree's motion.

---

[6] Red Tree briefly raises a Fed. R. Civ. P. 53(g) challenge, arguing that the other Sale Process Parties were "more responsible" and so should pay more than it. Opening. Br. at 27. This argument fails for the same reasons late intervention prejudices Crystallex. Joining as a Sale Process Party provides Red Tree the same procedural rights as the other Sale Process Parties. Those procedural rights put Red Tree on equal footing, and the District Court did not abuse its discretion by considering these procedural rights more relevant than the difference between the parties' judgments or their roles in causing the need to sell the shares.

13

\* \* \*

For these reasons, we will affirm.