427 A.2d 148

**COMMONWEALTH of Pennsylvania**

**v.**

**Johnny JAMES, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 13, 1978.

Decided March 18, 1981.

Donald S. Bronstein, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Philadelphia, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## ORDER

PER CURIAM.

The Court being equally divided the Order of the Court of Common Pleas is affirmed.

FLAHERTY, J., files an Opinion in Support of Affirmance in which LARSEN and KAUFFMAN, JJ., join.

O'BRIEN, C. J., files an Opinion in Support of Reversal in which ROBERTS and NIX, JJ., join.

## OPINION IN SUPPORT OF AFFIRMANCE

FLAHERTY, Justice.

Appellant Johnny James was convicted of murder of the first degree, aggravated robbery and conspiracy on November 28, 1973. Judgment of sentence was imposed and we affirmed the conviction by an equally divided Court. James now appeals from an order of the Court of Common Pleas of Philadelphia County denying his petition for post-conviction relief. For the following reasons we would affirm.

Although appellant raises four issues in his appeal,[1] each is based on his primary claim that the trial court erred in

1. Appellant's additional claims are that his statement was involuntary, that the trial court erred in instructing the jury as to voluntari-

failing to suppress his confession as the result of an unnecessary delay between arrest and arraignment. This primary claim has been raised at every stage in the proceedings, and so is not waived. It is however, finally litigated. When we affirmed the judgment of sentence on direct appeal, the claim that is now raised was finally litigated, and is not available, therefore, to appellant at the post-conviction stage.[2]

Although it may be true that when a judgment of sentence is affirmed by an equally divided court there has been no adjudication that would be binding on others, the adjudication is certainly binding on appellant. In other words, while there has been no precedent established in an affirmance by an equally divided court, there has been a decision as the the appellant in the case decided. This is tantamount to a decision on the merits of appellant's claim. We would overrule *Commonwealth v. Rightnour*, 469 Pa. 107, 364 A.2d 927 (1976), insofar as it holds to the contrary, and we would deny the instant appeal on the grounds that the question presented has been finally litigated[3] on direct appeal.[4]

LARSEN and KAUFFMAN, JJ., join in this opinion in support of affirmance.

ness, and that trial counsel was ineffective in failing to request proper instructions to the jury.

2. 19 P.S. § 1180–4(a) provides, in pertinent part:
   For the purpose of this act, an issue is finally litigated if:
   . . . . .
   (3) The Supreme Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue.

3. If we were to hold to the contrary, it is not difficult to imagine the anomalous situation in which a claim raised on direct appeal in a criminal case, where the conviction had been affirmed on direct appeal by an equally divided court, could then be raised *ad infinitum* at P.C.H.A. Presumably, we would divide equally on the same issue at P.C.H.A. just as we had on direct appeal. Apart from the absurdity of such a situation, it certainly could not be said to be in the interest of finality.

4. In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the United States Supreme Court held that their equally divided affirmance of a state criminal conviction did not constitute an "actu-

548

OPINION IN SUPPORT OF REMAND

O'BRIEN, Chief Justice.

This is an appeal from an order entered in the Court of Common Pleas of Philadelphia on September 25, 1979, denying appellant's petition for post-conviction relief.

Appellant, Johnny James, was on November 28, 1973, convicted by a jury of murder of the first degree, aggravated robbery and conspiracy. On March 12, 1974, post-verdict motions for new trial and in arrest of judgment were denied. Appellant was sentenced to life imprisonment on the murder conviction, ten-to-twenty years imprisonment on the aggravated robbery conviction and two years imprisonment on the conspiracy conviction. The sentences imposed on the lesser offenses were to run consecutively with one another and concurrently with that imposed on the murder conviction. Represented by new counsel, an appeal was taken to this court. On April 28, 1977, an equally divided court affirmed the judgment of sentence. *Commonwealth v. James*, 470 Pa. 217, 368 A.2d 271 (1977).

On April 28, 1978, appellant, represented by new counsel, filed a petition under the Post-Conviction Hearing Act, 19 P.S. §§ 1180–1, *et seq.* Following a hearing the trial court denied appellant's prayer for post-conviction relief on September 25, 1979. Hence this appeal.

al adjudication" within the meaning of 28 U.S.C. § 2244(c), which bars subsequent consideration of the same issues at federal habeas corpus if those issues have been actually adjudicated. This decision, since it is a construction of a federal statute, does not control the case at bar.

Rather, our view is better reflected in a dissenting opinion by Judge Mulligan in *United States ex rel. Radich v. Criminal Court of the City of New York*, 459 F.2d 745, 753 (2d Cir. 1972) citing the United States Supreme Court in *Hertz v. Woodman*, 218 U.S. 205, 213–214, 30 S.Ct. 621, 622–623, 54 L.Ed. 1001 (1910):

Under the precedents of this court, and, as seems justified by reason as well as by authority, an affirmance by an equally divided court is, as between the parties, a conclusive determination and adjudication of the matter adjudged; but the principles of law involved not having been agreed upon by a majority of the court sitting prevents the case from becoming an authority for the determination of other cases either in this or in inferior courts.

Appellant's principal claim is that the trial court erred in failing to suppress his confession as being the result of an unnecessary delay between arrest and arraignment. This issue has been raised at every point in the proceedings below and on direct appeal; there is, thus, no question of waiver presented. Normally a claim which has been addressed by this court on direct appeal will be considered "finally litigated" so as to preclude its being asserted by way of post-conviction petition. 19 P.S. § 1180–3(d). However, where judgment of sentence is affirmed by an equally divided court there has been no ruling upon the merits. Consequently the claim advanced by appellant has not been finally litigated for purposes of the Post-Conviction Hearing Act. *Commonwealth v. Rightnour*, 469 Pa. 107, 364 A.2d 927 (1976).

While acknowledging that the issue had been neither waived nor finally litigated, the hearing court nevertheless denied relief on the basis that a claim founded upon the rule in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), was not cognizable under the PCHA.[1] Specifically the hearing court held the PCHA is limited to invocation by persons asserting claims of a "constitutional dimension"; *Futch* claims not possessing such "constitutional dimension" may not be asserted via PCHA petition.

The hearing court relied, as does the Commonwealth now, upon language in numerous opinions of this court as requiring the result reached below.

The Post-Conviction Hearing Act itself provides:

"To be eligible for relief under this act, a person . . . must prove the following:

"(a) That he has been convicted of a crime,

"(b) That he is incarcerated in the Commonwealth of Pennsylvania under a sentence of death or imprisonment, or on parole or probation,

---

1. Appellant's suppression claim arose prior to the decision of this Court in *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), hence the applicable law is that contained in *Futch, supra.*

"(c) That his conviction or sentence resulted from one or more of the following reasons:

"(1) The introduction of evidence obtained pursuant to an unlawful arrest;

"(2) The introduction of evidence obtained by an unconstitutional search and seizure;

"(3) The introduction of a coerced confession into evidence;

"(4) The introduction into evidence of a statement obtained in the absence of counsel at a time when representation is constitutionally required;

"(5) The infringement of his privilege against self-incrimination under either Federal or State law;

"(6) The denial of his constitutional right to representation by competent counsel;

"(7) A plea of guilty unlawfully induced;

"(8) The unconstitutional suppression of evidence by the State;

"(9) The unconstitutional use by the State of perjured testimony;

"(10) The obstruction by State officials of petitioner's right of appeal;

"(11) His being twice placed in jeopardy;

"(12) The abridgement in any other way of any right guaranteed by the constitution or laws of this State or the constitution or laws of the United States, including a right that was not recognized as existing at the time of the trial if the constitution requires retrospective application of that right; or

"(13) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.

"(d) That the error resulting in his conviction and sentence has not been finally litigated or waived."

Clearly the only section of the act applicable to the instant case is section (c)(12), which requires of a party seeking

relief that he prove his conviction resulted from "[t]he abridgement . . . of any right guaranteed by the constitution or laws of this State . . . ".

The hearing court correctly observed that this Court has interpreted § 1180–3 (c)(12) as limiting the act to claims of "constitutional dimension." It appears that this limiting interpretation is derived from language in the opinion of the Court in *Commonwealth v. Musser*, 437 Pa. 131, 262 A.2d 678 (1970). In the *per curiam* opinion filed therein, we held that a claim of insufficiency of the evidence to raise an offense to murder of the first degree was "not constitutional, and therefore not appropriately raised in PCHA proceedings . . .". *Id.*, 437 Pa. at 133, 262 A.2d 678. While the result in *Musser* was clearly correct, just as clearly the reasoning in support of the result was not. It need not have been held that the claim of insufficiency was not constitutional; it was enough to observe that such a claim was not one of the enumerated bases of relief contained in the statute.

Nevertheless this Court continued to reaffirm the language of *Musser*. In *Commonwealth v. Lowery*, 438 Pa. 89, 263 A.2d 332 (1970), for example, we reiterated that an assertion the evidence was insufficient to support a conviction of murder of the first degree was "not constitutional" and hence "not appropriately raised in PCHA proceedings." *Id.*, 438 Pa. at 90, 263 A.2d 332. In *Commonwealth v. Smulek*, 446 Pa. 277, 284 A.2d 763 (1971), the claim held not cognizable under the PCHA was once again the insufficiency of the evidence. In *Commonwealth v. Gwyn*, 449 Pa. 131, 295 A.2d 73 (1972), we found no claim of "constitutional dimensions" was presented where appellant complained a witness at trial began to remove from a bag two knives which had been found at the scene of the crime, but neither of which was the murder weapon. Defense counsel timely objected and the court instructed the witness not to produce the knives.

In *Commonwealth v. Schmidt*, 452 Pa. 185, 299 A.2d 254 (1973), we declined to entertain a PCHA claim of trial error, i. e., the introduction by the Commonwealth of evidence of what appellant characterized as "prior, unrelated crimes."

While in all the cases cited, *supra,* this Court refused to entertain claims raised on post-conviction attack, it should be apparent that the proper justification for so doing was not the want of a "constitutional dimension," but rather the plain fact that the Legislature chose not to include those claims as bases upon which relief might be granted.

*Futch* claims first insinuated themselves into the area of PCHA applicability via the dissenting opinion of Mr. Justice Pomeroy in *Commonwealth v. Wayman,* 454 Pa. 79, 309 A.2d 784 (1973). In *Wayman* this Court was presented with a direct appeal *nunc pro tunc*; the strictures of the Post-Conviction Hearing Act were not at issue. The majority of the Court reached the merits of appellant Wayman's *Futch* claim. In dissent Mr. Justice Pomeroy took issue with the majority for permitting a party to raise *nunc pro tunc* a claim which would not have been available to him had he taken a timely appeal. What offended the *Wayman* dissenters was what they perceived to be an abuse of the principles of retroactivity. Thus the dissenters observed:

"The reason that subsequently announced but retroactively applied *constitutional* rights are available on a direct appeal *nunc pro tunc* is that such issue can be made the subject of a PCHA petition, and it is inefficient to require two proceedings where one would suffice. PCHA proceedings, however, are limited to issues of constitutional dimension, and *Futch* would therefore be unavailable to a PCHA petitioner." *Id.,* 454 Pa. at 88, 309 A.2d at 789 (footnotes omitted; emphasis in original).

It can be seen, then, that the *Wayman* dissenters were simply arguing that only those rights may be *retroactively* applied which are *constitutional* rights. This analysis comports perfectly with the second clause of § 1180–3(c)(12):

". . . including a right that was not recognized as existing at the time of the trial if the constitution requires retrospective application of that right . . .".

The analysis of the *Wayman* dissent, however, is of little assistance in construing the first clause of § 1180–3(c)(12), which authorizes relief to one who proves his conviction was

obtained through "[t]he abridgement . . . of any right guaranteed by the constitution or laws of this State or the constitution or laws of the United States . . .".

In *Commonwealth v. Gilmore*, 464 Pa. 464, 347 A.2d 305 (1975), this Court was, apparently for the first time, presented with an appeal from the denial of post-conviction relief in which a *Futch* violation was alleged. Mr. Chief Justice Jones authored the opinion expressing the judgment of the Court. Three justices concurred in the result; two dissented; one did not participate. Unlike the instant case, *Gilmore* was an appeal which sought *retroactive* application of the rule in *Futch*. The opinion of the Court held the *Futch* claim had been waived; it failed even to intimate that the claim was not cognizable under the PCHA.

Mr. Justice Roberts wrote in dissent; language appearing in that dissent is strongly relied upon by the Commonwealth here, as it was by the Court below.

"A *Futch* claim may be presented on direct appeal if not validly waived. Such a claim may not be presented on a PCHA petition because it does not fall within any of the enumerated bases for relief." *Gilmore, supra,* 464 Pa. at 473, 347 A.2d at 310.

Both the Commonwealth and the hearing court, however, have failed to consider a footnote added to the above-quoted language. In footnote 8, 464 Pa. at 473, 347 A.2d at 310, Mr. Justice Roberts emphasized the second clause of § 1180–3(c)(12), the clause addressing retrospective application, and observed:

"The right to exclusion of evidence obtained during an unnecessary delay in preliminary arraignment was not 'recognized' at the time of appellant's trial. The *Futch* rule is based upon our supervisory power rather than 'the constitution of . . . the United States,' and it can hardly be contended that 'the constitution' requires retrospective application 'of that right.'" *Id.*

The Commonwealth's reliance upon the above-quoted language is, then, misplaced; the *Gilmore* dissent plainly addressed the second, retroactivity, clause of § 1180–3(c)(12).

Of similar import is another case relied upon by the Commonwealth, *Commonwealth v. Betrand*, 484 Pa. 511, 399 A.2d 682 (1979). In *Betrand* a majority of this Court refused to entertain a prayer for post-conviction relief requesting the retrospective application of a non-constitutional right. See, also, *Commonwealth v. Rightnour, supra.*

In sum, neither the hearing court, the Commonwealth, nor appellant has directed us to any case which controls the question instantly presented: may a party by post-conviction petition assert a *Futch* violation where *Futch* provided a right "recognized as existing at the time of trial"?

The Post-Conviction Hearing Act by its plain language entitles one to relief who proves his conviction was obtained by "[t]he abridgement . . . of any right guaranteed by the constitution *or laws* of this State . . .". 19 P.S. § 1180–3(c)(12) (emphasis added). The Commonwealth does not dispute that the right to arraignment without unnecessary delay was guaranteed to accused persons at the time of appellant's trial both by rule of this Court[2] and by case law. In view of the unambiguous language of the act we are required to hold that the hearing court erred when it ruled appellant's *Futch* claim was not properly before it.

As Mr. Justice Roberts observed in his dissenting opinion in *Commonwealth v. Rightnour, supra,* an interpretation of the phrase "constitution or laws" to mean only "constitution", "makes no more sense than [to say] 'day and night' means only 'day' or 'A and B' means only 'A.' " *Id.,* 469 Pa. at 117, 364 A.2d at 931.

Accordingly, I would vacate the order of the hearing court denying post-conviction relief, and remand the record to that court to entertain and pass upon the merits of appellant's *Futch* claim.[3]

ROBERTS and NIX, JJ., join in this opinion.

**2.** Pa.R.Crim.P. 122, 130, formerly Pa.R.Crim.P. 116, 118.

**3.** Appellant additionally claims his statement was involuntarily given; that the trial court erred in improperly instructing the jury as to

voluntariness; and trial counsel was ineffective in requesting proper instructions to the jury. Appellant bases each of these claims, to a greater or lesser extent, upon an assertion concerning which there has been no decision on the merits: that there was unnecessary delay between his arrest and arraignment. Because I would remand this case for a determination of the merits of this central claim, I would decline to address at this time the remaining issues.