Gerald Jackson et al. *v.* Edward J. Hendrick et al. Edward G. Rendell, District Attorney of Philadelphia County, Appellant.

Edward J. Hendrick et al., Appellants *v.* Gerald Jackson et al., Appellees.

Argued December 14, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, CRAIG and DOYLE.

*Kenneth S. Gallant,* Assistant District Attorney, with him *Eric B. Henson,* Deputy District Attorney for appellant/intervening appellant, Edward G. Rendell, District Attorney of Philadelphia County.

*David Rudovsky, Kairys, Rudovsky & Maguigan,* with him *Donald Bronstein* and *John A. Beck,* for appellees, Gerald Jackson et al.

*John M. Myers,* Divisional Deputy City Solicitor, with him *Jonathan K. Stubbs,* Assistant City Solicitor, *Richard J. Gold,* Chief Assistant City Solicitor, *Alan J. Davis,* City Solicitor, and *Tama Clark,* for appellants,

Edward J. Hendrick et al., and the City of Philadelphia.

*Edward A. Aguilar,* Special Master for Prisons.

OPINION BY JUDGE DOYLE, February 14, 1983:

The District Attorney and the City of Philadelphia appeal from the orders of the Court of Common Pleas of Philadelphia County denying the City's Exceptions to the Decrees Nisi entered and denying the District Attorney's Petition to Intervene in this case.

This litigation began in 1971 when five prisoners (Plaintiffs) in the Philadelphia Prison System filed a class action in equity seeking injunctive relief from conditions of confinement which allegedly violated their constitutional and statutory rights. The case was assigned to a three judge panel of the court of common pleas which, on April 7, 1972, after a lengthy hearing,[1] issued a 264 page opinion and decree nisi. The court found that various conditions in the City prisons violated both statutory and constitutional rights and constituted cruel and unusual punishment. The decree ordered the city officials named as defendants[2] to take such immediate action to improve conditions as was feasible and ordered appointment of a Special Master to oversee long-term improvements in prison conditions.

Exceptions to the decree were dismissed and the City appealed to this Court. We affirmed the findings and conclusions of the court of common pleas and affirmed the grant of relief except as to the appointment of a Special Master. *Hendrick v. Jackson,* 10 Pa. Commonwealth Ct. 392, 309 A.2d 187 (1973). Plaintiffs sought allocatur on the issue of relief and the Supreme

---

[1] The trial transcript extended to 3,189 pages.

[2] The defendants included prison and City officials and the City of Philadelphia, but did not include the District Attorney.

Court reinstated the order for the appointment of the master. *Jackson v. Hendrick,* 457 Pa. 405, 321 A.2d 603 (1974).

In 1976, the court of common pleas issued a remedial decree which ordered that a maximum capacity be established for the prison system not to exceed the number of usuable cells and dormitory areas, and ordered the release of persons held in default of $1,500 bail or less in order to maintain population levels at no greater than the maximum capacity established. On appeal, we affirmed the order *per curiam. Jackson v. Hendrick,* (No. 1385 C.D. 1976, filed October 17, 1977).

Thereafter, Plaintiffs and the City entered into a series of consent decrees establishing a population capacity for the City's prison system and providing for maintenance of the prison population by release of inmates in a certain classification.[3] *The consent agreements also provided that prior to the release of any person the District Attorney be afforded the opportunity to be heard* on whether the release would be harmful to the public safety or pose an undue risk that the person released would fail to subsequently appear for scheduled court appearances.

In October, 1980, an additional hearing was held before the court of common pleas on the issue of overcrowding in the City's prisons. On March 17, 1981, the court issued an order establishing a prison population cap consistent with one person/one cell occupancy. Modified on June 22, 1981, the order (1) established a maximum capacity of 2,190 at the three

---

[3] Consistent with the court of common pleas 1976 decree, the first stipulation and agreement provided for the release of inmates held in default of $1,500 bail or less. Subsequent agreements provided for release of inmates held in default of $3,000 bail or less, in order to reduce prison population to constitutionally acceptable levels.

Philadelphia prisons, (2) prohibited triple celling, (3) prohibited double celling after August 1, 1981, and (4) established procedures for the release of inmates held on bail until the prison population was not in excess of capacity. The City filed exceptions to the March 17 and June 22, 1981 orders which, after argument, were dismissed with prejudice on June 29, 1981.

On March 27, 1981, after the court had already issued the March 17 order, the District Attorney petitioned the court to intervene pursuant to Pa. R.C.P. No. 2328.[4] On June 8, 1981, the court of common pleas denied the petition to intervene.[5] The District Attorney now appeals that denial to this Court.

On July 1, 1981, the District Attorney filed, in the Supreme Court of Pennsylvania, an application for stay of the March 17, 1981 order as modified June 22, 1981 and petitioned the Court to assume plenary jurisdiction over the case. By order dated July 7, 1981, the March 17 decree was stayed in part.[6] However, on May 25, 1982, the Supreme Court, in a plurality decision[7] denied the extraordinary relief sought by the

---

[4] The District Attorney also attached a petition to vacate and to reconsider the March 17 order, and included a bill of exceptions to the order.

[5] The court found that the District Attorney had delayed unduly in petitioning for leave to intervene, and denied intervention according to Pa. R.C.P. No. 2329(3).

[6] Per NIX and KAUFFMANN, J.J., the partial stay provided that detentioners could not be released under the order if charged with: murder, rape, robbery, burglary, aggravated assault, arson, kidnapping, or any crime committed with a deadly weapon; the stay also prohibited release under the March 17 order of any detentioner whose release would be a threat of danger to himself or others or pose a risk of nonappearance at subsequent hearings.

[7] ROBERTS, J. authored the opinion of the Court. FLAHERTY, J. joined and filed a concurring opinion. NIX, J. filed a dissenting opinion in which McDERMOTT and HUTCHINSON, J.J. joined and McDERMOTT, J. filed a dissenting opinion. Chief Justice O'BRIEN and Justice LARSEN participated in the decision, and hence joined the opinion of Justice ROBERTS.

District Attorney and vacated the stay previously granted. *Jackson v. Hendrick*, Pa. , 446 A.2d 226 (1982).

## The District Attorney's Appeal of the Denial of Intervention

Initially, we must determine the status of the District Attorney's petition to intervene. Plaintiffs urge that the plurality opinion of the Supreme Court affirming the court of common pleas' denial of intervention renders the appeal to this Court moot. Plaintiffs note that three Supreme Court Justices found the denial of intervention proper and another joined in the opinion of the plurality and filed a separate concurrence. Plaintiffs urge that even if the fourth joining Justice is not considered to form a majority of the Court, affirmance of the court of common pleas ruling by a divided court is determinative. *See Commonwealth v. James*, 493 Pa. 545, 427 A.2d 148 (1981). We are inclined to agree and hold the issue of the District Attorney's right to intervene to have been decided in the Supreme Court's opinion. In *James*, the Supreme Court was equally divided and the ruling of the court of common pleas was expressly held to be affirmed.[8] Here, Justice Flaherty joined in the opinion of the Court authored by Justice Roberts. We think the issue was thus clearly decided by four members of the Supreme Court and we need not consider it here.

## Joinder of the District Attorney[9]

The city then urges that the court of common pleas abused its discretion in refusing to allow joinder of the

---

[8] In a per curiam order preceding the opinions, the Court stated: "The Court being equally divided the Order of the Court of Common Pleas is affirmed." 493 Pa. at 546, 427 A.2d at 148.

[9] Although we dispose of this issue on substantive grounds, we note that review of the lengthy and complicated procedural record

District Attorney as an additional defendant. We do not agree. Pa. R.C.P. No. 2252 provides in pertinent part: ·

---

in this litigation suggests that the issue may not be properly before us. The record discloses that the City petitioned for leave to join numerous additional parties, including the District Attorney. On June 8, 1981, the court of common pleas issued an order denying that petition, and the City has not appealed that order to this Court. In its memorandum order, however, the court specifically denied joinder of all parties *excepting the District Attorney* and stated: "The matter of the joinder of the District Attorney, it is noted for the record, has been treated in a separate adjudication of this Court...." The record discloses no order specifically denying joinder of the District Attorney, only the order, also issued on June 8, 1981 which denied the District Attorney's petition to intervene. That order is before us on the appeal of the District Attorney, the City having no standing to appeal that order.

One of the criteria for intervention under Pa. R.C.P. No. 2327 asserted by the District Attorney in his petition to intervene was that he could have been joined as a party in the original action. Pa. R.C.P. No. 2327(3). In its June 8, 1981 memorandum order denying intervention, the court of common pleas remarked:

> Petitioner states his grounds for intervention as party defendant based on Pa. R. Civ. P. 2327. It is averred that he could have been joined as an additional party, when the complaint was filed.
>
> ....
>
> First, the Court notes that there is substantial doubt as to the first premise, that petitioner could have been joined originally. The case arises upon a course of action limited to the averred unconstitutional and unlawful conditions within the prisons of the City of Philadelphia. Petitioner is not an official of said City; nor has it been averred by others nor admitted by him that he is jointly or severally liable for such unlawful conditions as have been found in this case to exist.

It is unclear whether the court of common pleas intended this language to be dispositive of the joinder issue with respect to the District Attorney.

Because of the confusion and possible error of the trial court in dealing with the proposed joinder of the District Attorney, and because joinder is an issue included in the larger issue of interven-

(a)  In any action the defendant or any additional defendant may, as the joining party, join as an additional defendant any person whether or not a party to the action who may be alone liable or liable over to him on the cause of action declared upon by the plaintiff or jointly or severally liable thereon with him, or who may be liable to the joining party on any cause of action which he may have against the joined party arising out of the transaction or occurrence or series of transactions or occurrences upon which the plaintiff's cause of action is based.

We do not think the District Attorney is a proper party under the rule. The City urges that the District Attorney is the one official who has an interest in enforcing bail requirements with respect to detainees affected by the order of the court of common pleas and should be joined to represent that interest. The equity action *sub judice*, however, is not about the setting of bail or the conduct of the District Attorney in carrying out his prosecutorial function. It seeks, rather, a remedy from unconstitutional prison conditions for which the District Attorney has no responsibility. The District Attorney is not therefore, "alone liable" or "liable over" to the City; there is no injunctive relief against the District Attorney which Plaintiffs seek or could seek in this action. We recognize, of course, that the remedy ordered in this case affects the prosecutorial interests of the District Attorney. But while his involvement may have justified intervention had his application

---

tion, properly before us on appeal by the District Attorney, we have considered the substantive argument of the city raised in its brief and in oral argument and resolve the question on substantive grounds.

been timely, it does not fall within the purview of Pa. R.C.P. No. 2252. Justice ROBERTS, in his opinion denying intervention, noted that the court of common pleas has amply provided for participation and objection by the District Attorney in the release program. The court of common pleas did not err or abuse its discretion in refusing to allow the District Attorney to be joined.[10]

## DISMISSAL OF THE CITY'S EXCEPTIONS

The scope of review by the Commonwealth Court of a court of common pleas sitting in equity is severely restricted. *Ross v. Philadelphia Federation of Teachers*, 8 Pa. Commonwealth Ct. 204, 301 A.2d 405 (1973). We will not reverse if apparently reasonable grounds exist for the relief ordered and no erroneous or inapplicable rules of law were relied on. *Bethel Park School District v. Bethel Park Federation of Teachers*, 54 Pa. Commonwealth Ct. 49, 420 A.2d 18 (1980);

---

[10] We also disagree with the City's argument that joinder of the District Attorney was sought in a timely fashion under Pa. R.C.P. No. 2253, which provides:

> Neither praecipe for a writ to join an additional defendant nor a complaint if the joinder is commenced by a complaint, shall be filed by the original defendant or an additional defendant later than sixty (60) days after the service upon the original defendant of the initial pleading of the plaintiff or an amendment thereof unless such filing is allowed by the court upon cause shown.

The City urges that since the request to join was made well within sixty days of the March 17 order which first affected the District Attorney's interests, it was timely under a liberal construction of the rule. We disagree. At least since May of 1980, the District Attorney had participated in bail review proceedings under the consent agreements entered into between Plaintiffs and the City. The parties had every reason to know well before the order of March 17, 1981 that the District Attorney would continue to be involved. Even if joinder were appropriate, we do not think the request was timely under the Rule.

*Bristol Township Education Association v. School District of Bristol Township*, 14 Pa. Commonwealth Ct. 463, 322 A.2d 767 (1974).

### 1. *Procedural Errors*

In the June 29, 1981 order dismissing the City's Exceptions to its March 17 and June 22 orders, the court of common pleas first invoked Local Philadelphia Court Rule 240 C(6), which provides in pertinent part:

> The moving party shall file its brief in support of the exceptions or motions within thirty-five (35) days ... of the filing of the exceptions or post trial motions.... Should the moving party fail to file his brief within the thirty-five (35) days (unless an extension is allowed by the Court) the exceptions or motions shall be dismissed with prejudice.

The City's exceptions to the March 17 order were timely filed on April 10, 1981. No brief to support those exceptions was filed, however, until June 26, 1981 when a brief supporting exceptions to both the March 17 and June 22 orders was filed. The court of common pleas found justification to dismiss the exceptions because this brief was not filed within the required thirty-five days after the April 10 filing of the first exceptions. We think this was error. The time for filing the support brief under the rule expired on or about May 15, 1981. The trial court did not, at that time, however, dismiss the City's exceptions with prejudice, but rather, on June 22, 1981, the Court modified its March order and thereafter proceeded to argument on the City's exceptions. Plaintiff did not answer the City's exceptions until June 19, 1981, and the City's delay does not appear to have hindered the court in dealing with the substantive issues. Under

these circumstances, the court of common pleas must be viewed as having allowed an extension for the filing of a brief under the local rule.

## 2. *Substantive Dismissal*

The court of common pleas made it "abundantly clear" that the City's failure to comply with the local procedural rule was not the sole basis for dismissal of the City's exceptions. The court of common pleas addressed each of the City's representations of fact and found each exception lacking in substantive merit. The City urges, however, that the court's order was not factually supported in the record and constitutes an abuse of discretion. We disagree.

At the heart of the City's argument is the contention that the March 17 and June 22 orders greatly changed the focus of the litigation and implemented relief based on facts which were never adduced in an adversarial setting. The contention is without merit. The court's orders followed a continuing series of hearings, arguments, stipulations and agreements overseen by the court and its Special Master, all of which built upon and developed further the facts litigated and appealed early in this litigation, *i.e.*, the overcrowded conditions in the prison system which were found to be unconstitutional. The relief granted in the March 17 and June 22 orders represents no significant departure from that already implemented in this case;[11] it only slightly expands the scope of a release program which is already operating, but which is inadequate to

---

[11] The most recent stipulation and agreement provided for the release of detainees 1) held on misdemeanor offenses, 2) held in default of $3,000 bail or less, and 3) not included in 1) or 2) who posed no threat to society or risk of nonappearance at subsequent court proceedings. The court's order went further and eliminated the $3,000 bail cap and provides for release of those held in default of lowest bail first.

eliminate the declared constitutionally infirm over-crowded conditions. The court of common pleas clear-ly had discretion to implement this change without a special hearing on the new elements of relief.

The discretion enjoyed by the court sitting in equi-ty is broad. On earlier review of this case, our Supreme Court stated:

> Once conditions of confinement have been found unconstitutional, a court of equity has broad discretion to decide what relief should be granted. It may direct the prison authorities to prepare a plan to eliminate the constitutionally-objectionable conditions.... Alternatively, the court may itself, without submission of any plan or comments, grant mandatory or injunc-tive relief.

*Jackson v. Hendrick*, 457 Pa. at 411, 321 A.2d at 606 (1974) (citations and footnote omitted). Guided by this language, we can find no error of law or abuse of discretion in the action by the court of common pleas.

#### ORDER

Now, February 14, 1983, the orders of the Court of Common Pleas of the County of Philadelphia deny-ing the District Attorney the right to intervene and dismissing exceptions by the City of Philadelphia and other defendants to its March 17 and June 22, 1981 relief orders are hereby affirmed.

Judge WILLIAMS, JR. did not participate in the decision in this case.