Martin HARRIS, Albert Anthony, Orlando X. McCrea, Tyrone Glenn, Carlos Royster, Amin Abdullah, Khalid Allah Muhammad, and Arnold Furtick, Charles Oakes, Emanuel Gardner

v.

Irene PERNSLEY, individually and in her official capacity as Commissioner of the Department of Human Services of the City of Philadelphia, Royal L. Sims, Rev. Albert Campbell, Labora Bennett, James Barber, Mark Mendel, Donald Padova, each individually and in his or her official capacity as a member of the Board of Trustees of the Philadelphia Prison System, David S. Owens, individually and in his official capacity as Superintendent of the Philadelphia Prison System, Gueton Curione, individually and in his official capacity as Warden of Holmesburg Prison, Phillip Dukes, individually and in his official capacity as Warden of the Detention Center, John Daughen, individually and in his official capacity as Warden of the House of Corrections, Rodney D. Johnson, individually, Leo C. Brooks, individually, James S. White, individually and in his official capacity as Managing Director of the City of Philadelphia, William J. Green, individually, Hon. Wilson Goode, individually and in his official capacity as Mayor of the City of Philadelphia, City of Philadelphia, Jay C. Waldman, individually and in his official capacity as General Counsel for the Commonwealth of Pennsylvania, Ronald J. Marks, individually, Glen Jeffes, individually and in his official capacity as Commissioner of the Pennsylvania Department of Corrections.

Civ. A. No. 82–1847.

United States District Court, E.D. Pennsylvania.

Dec. 31, 1986.

As Amended Jan. 5, 1987.

See also, D.C., 654 F.Supp. 1057.

Sarah B. Vandenbraak and Gaele McLaughlin Barthold, Deputy Dist. Atty., Philadelphia, Pa., for movant.

David Richman and Philip H. Lebowitz, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for plaintiffs.

Richard J. Gold, Chief Deputy City Sol. and Guy Villim, Asst. City Sol., Law Dept., Philadelphia, Pa., for City defendants.

Carl Vaccaro, Deputy Atty. Gen., Philadelphia, Pa., for defendants Glen Jeffes and Ronald J. Marks.

John P. Krill and Rosalyn K. Robinson, Deputy Gen. Counsels, Com. of Pa., Harrisburg, Pa., for defendant Jay C. Waldman.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

In this civil rights action concerning conditions of confinement in City of Philadelphia penal institutions, the District Attorney for Philadelphia, Ronald D. Castille, has moved to intervene as a party-defendant. The motion is opposed by the plaintiff-prisoner class and by "the City defendants."[1] Defendants Waldman, Marks, and Jeffes have neither opposed nor supported Mr. Castille's motion. An evidentiary hearing and argument were held on October 10, 1986, October 27, 1986, and November 14, 1986.[2] On December 11, 1986, the court stated from the Bench its opinion that the District Attorney was not entitled to intervene as of right and the petition for permissive intervention should not be allowed but that the court would permit the District Attorney to appear and object to the proposed settlement agreement. Accordingly, the motion of the District Attorney is now denied of record for the reasons stated.

This action was commenced by the filing of a *pro se* complaint and request to proceed *in forma pauperis* by ten inmates in Holmesburg Prison on behalf of themselves and all other persons similarly situated. Plaintiffs' action, pursuant to 42 U.S.C.A. § 1983 (West 1981), alleged that the conditions of confinement in Holmesburg Prison violated the Eighth Amendment's prohibition against cruel and unusual punishment. Plaintiffs sued the Commissioner of the Department of Human Services of the City of Philadelphia, the members of the Board of Trustees of the Philadelphia Prison System, the Superintendent of the Philadelphia Prisons, the Warden of Holmesburg Prison, and the Medical Director of the Philadelphia Prisons, in their individual and official capacities. Leave to proceed *in forma pauperis* was granted and counsel appointed. Plaintiffs then filed an amended complaint adding as defendants the City of Philadelphia, the Managing Director of the City of Philadelphia, the Mayor of the City of Philadelphia, the Commissioner of the Pennsylvania Bureau of Corrections and General Counsel of the Commonwealth of Pennsylvania, in their individual and official capacities. The Medical Director of the Philadelphia Prisons was dropped as a defendant. All defendants' motions to dismiss were granted on December 30, 1983 on two grounds: res judicata and abstention, both of which were related to litigation pending in the state courts.

In February, 1971, five inmates of the Philadelphia prison system instituted *Jackson v. Hendrick*, a class action in equity in the Court of Common Pleas of Philadelphia County, Pennsylvania, to attack the constitutionality of their conditions of confinement and request injunctive relief against prison and city officials and the City of Philadelphia. On April 7, 1972, a three-

---

1. The term City defendants refers to all defendants represented by the City Solicitor. The group includes all defendants except Waldman, Marks, and Jeffes.

2. In his supplemental brief in support of motion to intervene, the district attorney, citing *Adams v. Baldwin County Board of Education*, 628 F.2d 895, 897 (5th Cir.1980), asserted the right to an evidentiary hearing on the issue of intervention. Under the law of this circuit, the District Attorney was not entitled to such a hearing but nevertheless the court chose to make the factual determination of timeliness on as full a record as possible. This memorandum constitutes any findings of fact and conclusions of law required by this hearing.

judge court held that conditions in the Philadelphia County prisons violated the rights of inmates under, *inter alia*, the United States and Pennsylvania Constitutions; the *decree nisi* appointed a Prison Master to administer the court's corrective decree. On June 7, 1972, the decree became final; it was later affirmed by the Pennsylvania Supreme Court. *Jackson v. Hendrick*, 457 Pa. 405, 321 A.2d 603 (1974). The three-judge state court retained jurisdiction and continued to issue remedial orders and approve consent decrees entered into by the parties.[3] One order established a maximum inmate capacity for the Philadelphia prison system based on "one man-one cell." Nonetheless, plaintiffs contend that unconstitutional conditions persist.

The United States Court of Appeals, reversing the judgment of this court (Opinion of Gibbons, J.; Garth, J., dissenting), held that the Court of Common Pleas' judgment was not res judicata as to the claims made in this action. The court explained:

> There is no identity of causes of action between the plaintiffs in the 1971 lawsuit and this one. No member of the present class even had a cause of action either for injunctive relief or for damages growing out of the conditions in Holmesburg in 1971, for no such class member was subjected to those conditions. A Pennsylvania judgment is not conclusive on matters which by reason of the nature of the case could not have been adjudicated.

*Harris v. Pernsley*, 755 F.2d 338, 342 (3d Cir.1984) (citations omitted).

The Court of Appeals also held that because the federal court plaintiffs seek money damages while the state court plaintiffs did not this was not a proper case for abstention under *Colorado River Water Conservation District v. United States*,

424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *Harris*, 755 F.2d at 346. The court stated,

> The mere pendency of a state court injunction predicated on federal law, which according to the complaint has not produced an alleviation of ongoing violations of the Constitution, is not such an exceptional circumstance as to relieve the federal courts of 'the virtually unflagging obligation ... to exercise the jurisdiction given them.'

755 F.2d at 345 (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246).

Petitions for rehearing were denied on March 21, 1985. *Harris v. Pernsley*, 758 F.2d 83 (3d Cir.1985) (Judges Adams, Hunter, Weis, Garth, and Becker would have granted the petition for rehearing). *Id.* Defendants petitioned the United States Supreme Court for a writ of certiorari; the petition was denied on November 4, 1985. — U.S. ——, 106 S.Ct. 331, 88 L.Ed.2d 314 (1985) (Justices Rehnquist and O'Connor would have granted certiorari; Chief Justice Burger dissented from the denial of the writ). *Id.*

Following remand, the trial court granted leave to file a second amended complaint in order to provide adequate class representation. Plaintiffs filed a second amended complaint on behalf of an expanded class of prisoners in all Philadelphia prisons and added the wardens of the Detention Center and the House of Corrections as party defendants in their individual and official capacities. The plaintiffs and City defendants also began negotiations for settlement of both the state and federal litigation. This court was informed on August 8, 1986, that a proposed settlement had been reached. A preliminary hearing on approval of the settlement was then scheduled.

---

**3.** On January 16, 1987, the Pennsylvania Supreme Court assumed extraordinary jurisdiction and vacated a contempt order against the defendants for failing to comply with population limits fixed by the three-judge court. In light of *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), and statutory repeals, the Pennsylvania Court held that the legal basis for a "one man, one cell" population limit had been eroded and that a fresh consideration of the "totality of the circumstances was required to determine whether conditions of confinement in the Philadelphia prisons are unconstitutional." *Jackson v. Hendrick*, 509 Pa. 456, 470, 503 A.2d 400, 407–08 (1986).

On August 19, 1986, District Attorney Ronald E. Castille moved to intervene as a party defendant, pursuant to Fed.R.Civ.P. 24. Mr. Castille sought intervention as of right pursuant to Fed.R.Civ.P. 24(a) or, in the alternative, permissive intervention pursuant to Fed.R.Civ.P. 24(b) in order to oppose the settlement.

## I. *Intervention As Of Right*

Federal Rule of Civil Procedure 24(a) provides in pertinent part as follows:

> Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In *Pennsylvania v. Rizzo*, 530 F.2d 501 (3d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976), the Third Circuit enumerated three distinct criteria that a putative intervenor is required to establish: (1) his application is timely, (2) he has a sufficient interest in the matter and his interest would be affected by the disposition, and (3) his interest is not adequately represented by the existing parties. *Id.* at 540.

Before addressing the sufficiency of the interest or the adequacy of representation, there must be a determination of timeliness. *See Donovan v. United Steelworkers*, 721 F.2d 126, 127 (3d Cir.1983), *cert. denied*, 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984).

■ The district court must examine all the circumstances, *see NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973), including the stage of the proceedings, the prejudice caused to existing parties by delay in seeking intervention and the reasons for the delay. *See Rizzo*, 530 F.2d at 507 (citing *Nevilles v. EEOC*, 511 F.2d 303, 305 (8th Cir.1975)). Although determining the scope of a putative intervenor's interest may require inquiry into state law, "the timing and manner of intervention is purely a matter of federal law." *Olden v. Hagerstown Cash Register, Inc.*, 619 F.2d 271, 274 (3d Cir.1980).

The District Attorney contends that timeliness should be measured from the moment he first "officially learned" of the proposed settlement agreement from the City defendants. The City defendants and plaintiffs assert that timeliness should be measured from the time the lawsuit was filed. However, "in considering timeliness the beginning point should be the stage when inadequate representations become apparent." *National Wildlife Federation v. Gorsuch*, 744 F.2d 963, 970 (3d Cir.1984) (citing *Legal Aid Society of Alameda v. Dunlop*, 618 F.2d 48 (9th Cir.1980)).

The court does not believe that there has ever been inadequate representation of any proper interest of the District Attorney, but for the purpose of determining timeliness, the court accepts the District Attorney's contention that during settlement negotiations the City Solicitor's interests and actions have been adverse to the interest of the District Attorney in prosecuting criminal cases.

The District Attorney agrees that earlier in this litigation the City Solicitor's office was adequately representing his interest. The City Solicitor's actions were those that the District Attorney himself would have taken when attempting to have the action dismissed. The District Attorney concedes that as long as the City Solicitor's office was attempting to have the case dismissed, he would not have had standing to intervene.

The District Attorney asserts that he officially learned of the City Solicitor's intent to enter into a consent order on August 12, 1986. His motion to intervene was filed one week thereafter. However, the District Attorney was not entitled to wait for "official notification" of a proposed settlement to attempt to intervene because he does not like it. He was required to move to intervene as soon as he knew or should have known that his interests were no long-

er adequately protected. *See In re Fine Paper Antitrust Litigation,* 695 F.2d 494, 500 (3d Cir.1982); *Dodson v. Salvitti,* 77 F.R.D. 674 (E.D.Pa.1977).

As in *Dodson,* the putative intervenor "knew or should have known from the time this litigation was commenced that the ultimate disposition of these proceedings might well affect the interests which they now seek to protect." *Id.* at 677. Therefore, the District Attorney was under a duty to monitor the litigation ·and move promptly to intervene upon discovering that his interests might no longer be protected. The City Solicitor's settlement posture which displeased the District Attorney could not have come as a surprise. The District Attorney voiced similar objections to the City Solicitor's activities in attempting to settle the *Jackson v. Hendrick* litigation. As soon as the District Attorney knew or should have known of this litigation, he had an obligation to make sure that his interests continued to be protected.

The District Attorney knew or had reason to know of this litigation long before August 16, 1986, when the District Attorney had "official knowledge" of the proposed settlement. At the time this action was filed the District Attorney was following the *Jackson v. Hendrick* litigation closely. Indeed, the District Attorney had attempted to intervene in *Jackson* on March 27, 1981, because of disagreement with the City's posture in that case. The court finds that it is highly unlikely that the District Attorney's office had no knowledge of this related litigation when it was instituted.

The District Attorney of Philadelphia, as all lawyers in this Circuit, is expected to read decisions of the United States Supreme Court and those of the Court of Appeals for the Third Circuit, at the very least those pertaining to the areas of his sworn responsibilities.[4] Both Mr. Castille and former District Attorney Edward G.

Rendell testified that they had not in fact read any of the opinions in this litigation. However, former Deputy District Attorney Eric B. Henson testified that he had read the opinion of the United States Court of Appeals for the Third Circuit reversing this court's dismissal of the action. Notwithstanding the Deputy District Attorney's failure to discuss it with the District Attorney, the District Attorney is charged with notice of the litigation and the need to protect his interest at least from that time forward. The reasons for his failure to communicate this information to then District Attorney Rendell are irrelevant. The District Attorney must be charged with knowledge of this litigation no later than March, 1985.

The City Solicitor's office petitioned for a writ of certiorari and was continuing to protect the interest of the District Attorney. However, on the date of the denial of the writ, the District Attorney knew or should have known that efforts to obtain dismissal had failed and settlement negotiations were likely. Upon denial of the writ of certiorari the District Attorney was required to move promptly to intervene if he wanted to be a party to this action. But he failed to "take the necessary steps in [his] own behalf." *In re Fine Paper Antitrust Litigation,* 695 F.2d at 501. Instead, the District Attorney waited until the parties were near settlement and then attempted to intervene only to interfere with the settlement. The District Attorney's motion to intervene comes too late in these proceedings. *Accord Dodson,* 77 F.R.D. at 677.

The court must next inquire whether the delay in intervention has prejudiced existing parties. *See Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania,* 674 F.2d 970 (3d Cir.1982); *Rizzo,* 530 F.2d at 506. Here, the prejudice resulting from the delay is great. The parties have invested a great amount of time and effort in reaching a

---

4. Canon 6 of the Pennsylvania Code of Professional Responsibility states, "A lawyer should represent a client competently." 42 Pa.C.S.A. (Purdon 1975). "A lawyer is aided in attaining and maintaining his competence by keeping abreast of current legal literature and developments...." EC 6-2.

settlement. They have arrived at two agreements, the first of which was abandoned because of the District Attorney's objections. Had the District Attorney moved to intervene promptly as a party to the settlement negotiations, he could have made his opposition to settlement clear. Then, the time and energy devoted to settlement negotiations might have been invested in preparing the case for trial; indeed, the case might already have been tried. Intervention now will only delay the litigation further and force plaintiffs to endure confinement under allegedly unconstitutional conditions for a greater period of time. The public interest as well as the plaintiffs' interest required prompt disposition of this litigation following its remand to this court.

Other than lack of "official knowledge," the District Attorney has not presented any reason for waiting ten months after the denial of the writ of certiorari to file a motion for intervention. Because the court has already found that the District Attorney was charged with knowledge of the litigation during that period, the delay is inexcusable. *Cf. Rizzo,* 530 F.2d at 507 (reasons for delay inadequate where no concealment of progress of highly publicized litigation). The District Attorney chose to ignore this litigation until he was "officially" informed that a consent decree had been proposed. The decision to do so was a tactical decision that cannot excuse the delay. *See Donovan v. United Steelworkers of America, AFL–CIO,* 721 F.2d 126, 127 (3d Cir.1983), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984).

■ In summary, the court finds that the District Attorney's motion must be denied as untimely because it comes far too late in the proceedings, delay in filing the motion would prejudice the existing parties and there is no adequate reason for the delay. The application to intervene is therefore denied as untimely.

But the question whether untimeliness alone is always sufficient reason to reject an intervention application is open in the

Third Circuit. *See Hoots v. Commonwealth,* 672 F.2d 1133, 1135 n. 2 (3d Cir. 1982). Therefore, the court also considered whether the District Attorney meets the other criteria for intervention as of right and permissive intervention.

Federal Rule of Civil Procedure 24(a)(2) requires that an intervenor possess "an interest relating to the property or transaction which is the subject of the action and [that] he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest...." The Supreme Court emphasized in *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), that the interest must be a "significantly protectable" one. 400 U.S. at 531, 91 S.Ct. at 542.

■ In determining whether the putative intervenor has a "direct, substantial, legally protectable interest in the proceedings," *Dodson,* 77 F.R.D. at 676 (quoting *Hobson v. Hansen,* 44 F.R.D. 18, 24 (D.D.C.1968)), the complaint determines the subject matter of the action. *See id.; East Powelton Concerned Residents v. United States Dept. of Housing,* 69 F.R.D. 392 (E.D.Pa. 1975); *see also Alston v. Coughlin,* 109 F.R.D. 609, 613 (S.D.N.Y.1986) (guards' union denied right to intervene in suit alleging unconstitutional conditions of confinement because only overcrowding and unsafe conditions rather than defects in guard assignment procedure alleged). Plaintiffs complaint alleges that the conditions of their confinement violate the Eighth Amendment's prohibition against cruel and unusual punishment.

■ The District Attorney has asserted an interest in enforcing the criminal law and a related interest in protecting the public safety. To determine the interest of the District Attorney in this litigation, the court must look to state law. *See Olden,* 619 F.2d at 274. Under the relevant statutes and case law as well as the evidence herein, the District Attorney has no legally cognizable interest in the conditions of con-

finement in Holmesburg Prison or any other part of the Philadelphia prison system.

Statutory authority to run the Philadelphia prison system is vested in the Board of Trustees of Philadelphia Prisons. 351 Pa.Code § 5.5–701. The Department of Human Services of the City of Philadelphia has general supervisory powers over all city correctional facilities. The General Counsel for the Commonwealth of Pennsylvania and the Commissioner of the Pennsylvania Bureau of Corrections have responsibilities that affect the conditions of confinement in the Philadelphia prisons. The District Attorney for Philadelphia does not.

Under Pennsylvania law, the right of the District Attorney to intervene and his joinder in the related state court litigation have been denied by the Pennsylvania courts. The denial of the right to intervene was based on a lack of timeliness, *see Jackson v. Hendrick*, 498 Pa. 270, 446 A.2d 226 (1982), but the denial of joinder was on substantive grounds, *see Jackson v. Hendrick*, 72 Pa.Cmwlth. 63, 70, 456 A.2d 229, 232–33 (1983). The Pennsylvania Commonwealth Court noted the related state action "is not about ... the conduct of the District Attorney in carrying out his prosecutorial function. It seeks rather a remedy from unconstitutional prison conditions for which the District Attorney has no responsibility." *Id.* Therefore, state law is clear that the District Attorney has no direct interest in this litigation.

Plaintiffs are strongly opposed to the District Attorney's motion to intervene. Plaintiffs seek no relief against the District Attorney. Counsel for plaintiffs stated in oral argument that he did not know how he would proceed against the District Attorney as a defendant other than to move for his dismissal if intervention were granted, settlement disapproved and the litigation continued.

It is clear that the District Attorney has "the power—and the duty—to represent the Commonwealth's interest in the en-forcement of its criminal laws." *Commonwealth ex rel. Specter v. Bauer*, 437 Pa. 37, 41, 261 A.2d 573, 575 (1970). It is equally clear that under Pennsylvania law the City Solicitor's office does not have the power or the duty to represent the District Attorney in federal litigation concerning the enforcement of the Commonwealth's penal statutes. But the enforcement of the Commonwealth's penal statutes is not here at issue. While the final disposition of this action—either by settlement or by injunctive relief granted after a finding of unconstitutional conditions—could have some effect on the District Attorney's enforcement function,[5] it is not the kind of direct, substantial interest that permits intervention as of right. *See Donaldson*, 400 U.S. at 531, 91 S.Ct. at 542.

Nor is the District Attorney's purported interest in protecting the public safety of the citizens of Philadelphia and the Commonwealth the kind of direct interest required by *Donaldson*. Many agencies of government at the federal, state, and municipal levels are charged with protecting some aspect of public safety. This alone does not entitle them to intervene in any legal action they believe might adversely affect the public interest. A governmental entity has the right to intervene only to protect a *direct* interest; a view that only the District Attorney can or will protect the public safety is inaccurate and insufficient.

Intervention as of right requires that the purported interest of the District Attorney not be adequately represented by the existing parties. *See McClune v. Shamah*, 593 F.2d 482 (3d Cir.1979); *Pennsylvania v. Rizzo*, 530 F.2d at 540; *see also Hoots*, 672 F.2d at 1135. The burden of showing inadequate representation, although a minimal one, *see Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972), is on the putative intervenor, *see, e.g., Hoots*, 672 F.2d at 1135.

---

**5.** From the evidence adduced at the hearing, the court is not convinced that the effect of impos-ing population caps on the district attorney's enforcement function would be significant.

In his motion to intervene, the District Attorney expresses concern over the effects of the proposed consent decree on his ability to carry out his prosecutorial function effectively. The court finds that the City defendants are adequately representing any proper interest of the District Attorney in this litigation.

In *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* the Third Circuit stated, "[r]epresentation is generally considered adequate if no collusion is shown between the representative and an opposing party, if the representative does not represent an interest adverse to the proposed intervenor and if the representative has been diligent in prosecuting the litigation." 674 F.2d at 973 (citing *Olden,* 619 F.2d at 274–75; *Martin v. Kalvor Corp.,* 411 F.2d 552, 553 (5th Cir.1969)).

The District Attorney has failed to meet his burden of proving that no existing party adequately represents his interest. *See Trbovich,* 404 U.S. at 538 n. 10, 92 S.Ct. at 636 n. 10; *Hoots,* 672 F.2d at 1135. The District Attorney has neither alleged nor shown collusion between the City defendants and plaintiffs or any failure to prosecute diligently. In addition, he has failed to show that the City defendants' interests are adverse.

The District Attorney based his assertion of inadequate representation primarily on agreement by the City defendants to the first proposed consent order. The District Attorney complained of the "mechanical timetables to be implemented by the consent decree," *see* Brief in Support at 7, to rights accorded to criminal defendants and limitations imposed on the District Attorney in criminal prosecutions, *see id.* at 8. Since the filing of the motion to intervene, proposed consent order No. 1 has been withdrawn by the parties. Upon withdrawing proposed consent order No. 1, the city defendants and plaintiffs informed the court that the settlement agreement had been renegotiated in large part because of the objections of the District Attorney. This suggests that the concerns of the District Attorney have been considered by the City defendants.

The renegotiation of the settlement agreement rendered moot many of the District Attorney's concerns. In consulting the District Attorney and modifying the agreement in view of his concerns, the City defendants demonstrated that their interest was not adverse to that of the District Attorney. Clearly, the City defendants recognized their need to work with the District Attorney to achieve an enforceable settlement.

The proposed revised settlement agreement presented to the court for approval pursuant to Fed.R.Civ.P. 23(e) sets a maximum allowable population in each of the Philadelphia prisons. By its terms it does not implicate the District Attorney's prosecutorial function in any way. While the court recognizes that prison officials would find it easier to comply with the prison population limits if there were more speedy trials for the pretrial detainees who are the overwhelming majority of those incarcerated in City prisons, caps on prison population can be reached in ways that would not interfere with the prosecutorial function. The City defendants will have a choice of methods to bring the prison population into conformance with the agreed upon limitations under the proposed agreement. The City may build additional prisons or convince the judiciary that more convicted defendants should serve their sentences in state institutions. The District Attorney fears release of pretrial detainees the District Attorney considers a risk to the community or unlikely to appear for trial. However, the settlement agreement provides that persons charged with or convicted of murder, forcible rape, or a crime involving the use of a gun or knife in the commission of an aggravated assault or robbery may be admitted to the City prisons even if the population caps are exceeded; there is no provision in the settlement agreement for the release of any prisoner. The City defendants' behavior during the negotiations demonstrates that the City defendants are adequately representing any

legally cognizable interest of the District Attorney in this litigation.

Because the District Attorney has met none of the three criteria required for intervention as of right, the motion to intervene as of right will be denied.

## II. *Permissive Intervention*

The District Attorney requests that if intervention as of right is denied he be granted permission to intervene pursuant to Fed.R.Civ.P. 24(b). Rule 24(b) provides *inter alia:*

> Upon timely application anyone may be permitted to intervene in an action ... (2) upon an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b). Timeliness and the existence of common questions of law or fact must inform the court's exercise of discretion in permitting intervention. *See McKay v. Heyison,* 614 F.2d 899, 906 (3d Cir.1980).

■ The District Attorney's application for permissive intervention must also be timely. *See In re Fine Paper Antitrust Litigation,* 695 F.2d 494 (3d Cir.1982) ("An application to intervene, whether of right or by permission, must be timely under the terms of Rule 24."). The court has already found this application to intervene untimely. Therefore, it has no discretion to grant the District Attorney's application to intervene as a party-defendant.

Federal Rule of Civil Procedure Rule 24(b) allows other than statutory permissive intervention only "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R.Civ.P. 24(b).

■ The District Attorney's proposed answer to plaintiffs' second amended complaint and proposed cross-claim against the City defendants presents some common questions of law or fact between the present action against the City defendants by a plaintiff class that includes pretrial detainees and the proposed cross-claim by the District Attorney against officials of the City of Philadelphia for infringing upon the prosecutorial function. However, the "common questions" relate only to remedies. There is no issue of law or fact relevant to liability common to the present action and any claim or defense of the District Attorney. Because the District Attorney has no responsibility for the conditions of confinement in the Philadelphia prison system, the common issues are not sufficiently related to the litigation the plaintiffs intended to pursue if the settlement were not approved. Indeed, the District Attorney has shown no interest in intervening if the litigation continues. It is the parties' proposal to settle that has led to the District Attorney's interest in intervention as it is the settlement to which the District Attorney objects.

The court finds that permitting intervention would cause both undue delay and prejudice to the original parties. This action may have reached its conclusion. The parties have reached a settlement and moved for its approval pursuant to Fed.R. Civ.P. 23(e). If the motion to intervene is granted and if the court chooses not to allow settlement of the action, the parties will be forced to litigate. Extensive discovery may be required. If the District Attorney's motion is granted, the City defendants intend to move for joinder of the state courts and/or its judges. The litigation that would ensue would be lengthy, expensive and burdensome.

Prejudice would result to the plaintiffs because they would be forced to endure allegedly unconstitutional conditions for a much longer period of time. Prejudice would also result to existing defendants who have by negotiating a settlement limited their liability for compensatory damages where the exposure was great and also limited liability for attorneys' fees. Not only would they be unable to enter into the settlement they have negotiated, but they, not the District Attorney, will be exposed

to far greater liability for compensatory damages and attorneys' fees pursuant to 42 U.S.C.A. § 1988 (West 1981). While not admitting liability, the present defendants wish to devote money and personnel to improving conditions within the prisons rather than continuing to defend this lawsuit. Without sharing any of the increased exposure to liability litigation rather than settlement entails, the District Attorney seeks to intervene only to prevent this settlement.

The court does not believe that granting the District Attorney the status of a party-defendant would allow a fuller or fairer resolution of the issues. Allowing the District Attorney to intervene would not paint "a fuller picture of the conditions [at issue]," *Christy v. Hammel,* 87 F.R.D. 381, 395 (M.D.Pa.1980), because the District Attorney has no control over those conditions. Despite the untimeliness of the District Attorney's motion for intervention and the peripheral nature of his interest his objections to the proposed settlement have been stated on the record for the consideration of the court with the consent of the parties. The District Attorney has been accorded the right to appear and be heard in opposition to the settlement. *Cf. Kirkland v. New York State Department of Correctional Services,* 711 F.2d 1117 (2d Cir. 1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984) (approving district court's grant of intervention for sole purpose of objecting to the settlement). The court believes this statement of objections to the settlement agreement was adequate for the District Attorney to preserve his interest in this litigation. The District Attorney has voiced his concerns with the settlement agreement; however, the District Attorney's consent to the settlement is not required, *see Kirkland,* 711 F.2d at 1125–28, nor would he have standing to appeal the approval or disapproval of the settlement, *see Boston Tow Boat Co. v. United States,* 321 U.S. 632, 64 S.Ct. 776, 88 L.Ed. 975 (1944) (denying intervenor right to take independent appeal).