562 A.2d 973

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Appellant,**

v.

**O'HARA SANITATION COMPANY, William J. O'Hara and Betty E. O'Hara, Appellees.**

Commonwealth Court of Pennsylvania.

Argued June 8, 1989.

Decided Aug. 4, 1989.

48

Mary Young, Asst. Counsel, Philadelphia, for appellant.

Steven Speece, King of Prussia, Robert J. Kerns, Landis, Williams & Kerns, Lansdale, John M. Elliott, James D. Morris, Mark J. Schwemler, Leslie E. Bowser, Philadelphia, for appellees.

Before BARRY, McGINLEY and SMITH, JJ.

McGINLEY, Judge.

The Department of Environmental Resources (DER) appeals an order of the Court of Common Pleas of Montgomery County (Chancellor) refusing DER's request to enjoin the recycling activities of the O'Hara Sanitation Company, Inc. (OSC). We affirm.

On August 12, 1985, DER filed a complaint in equity and a petition for preliminary and special injunctive relief against OSC and William J. and Betty E. O'Hara (O'Haras) claiming that OSC was illegally engaged in solid waste processing activities without a permit at a location in Montgomery County known as the "garage site," and against the O'Haras as owners of the land upon which these activities were being carried out. On August 19, 1985, the Chancellor preliminarily enjoined OSC from "dumping, depositing, processing and burning, or allowing the dumping, depositing, processing and burning of solid waste, as defined in 35 P.S. § 6018.103 at the areas known as the Garage Site, the School Site and any other unpermitted places in Pennsylvania." (Order of the Chancellor, August 19, 1985, at 1.) The Chancellor also determined that the "present recycling activities may continue." *Id.*

DER thereafter sought an order to prohibit recycling activities which were previously found to be permissible. After a full hearing on March 14, 1986, to determine whether OSC's recycling activities constituted the processing of solid waste, the Chancellor denied DER's request for an injunction ruling that OSC's activities did not amount to processing, and dismissed the O'Haras from the case, finding that there was "not a scintilla of evidence in the record or at argument that the individuals in any way violated any provisions of the Solid Waste Management Act." (Opinion and Order of the Chancellor, April 23, 1986, (Opinion) at 1, Appendix 1 to DER's brief.) DER appeals this order.[1]

OSC is in the business of the collection, transportation and disposal of municipal solid waste. At the garage site,

1. This appeal was docketed at No. 1595 C.D. 1986. DER, OSC and the O'Haras then entered into settlement negotiations which delayed the disposition of this appeal. While these negotiations were taking place the Environmental Quality Board promulgated new municipal waste regulations. DER then notified OSC that the recycling activities they were conducting required a permit under the new regulations. On September 29, 1988, DER ordered OSC to cease operations for failure to obtain the permits. OSC and the O'Haras filed an application for preliminary and permanent injunction, as well as a complaint in

OSC recycles construction and demolition waste, defined as "waste building materials, dredging materials, grubbing waste, and rubble resulting from construction, remodeling, repair, and demolition operation on houses, commercial buildings, and other structures and pavements." (Notes of Testimony, March 14, 1986, (N.T.) at 29.) The construction and demolition material is dumped from roll-off containers at a specific location at the garage site. A bulldozer spreads the materials out on the ground so that recyclable materials can be hand-picked out of the pile. (Deposition of Patrick M. O'Hara, secretary-treasurer of OSC, October 17, 1985, (O'Hara Deposition) at 35.) Approximately half of the material, including metal, cardboard and wood, is recycled; the other half is scooped up by the bulldozer, dumped into an open top trailer and transported off-site to permitted disposal sites. (O'Hara Deposition at 31, 36–37.)

DER requests this Court to reverse the Chancellor's decision and issue an injunction against OSC because: the Chancellor misinterpreted the Pennsylvania Solid Waste Management Act (Act);[2] the Act requires a permit for the operation of a solid waste transfer facility; and, the Act does impose liability on landowners for violations of the Act occurring on their land.

OSC argues that the Chancellor's decision should be upheld because recycling operations such as OSC's do not require permits from DER.

equity with this Court seeking relief from the September 29, 1988, order. On December 9, 1988, our Court issued a preliminary injunction enjoining DER from enforcing the order. DER then filed preliminary objections to OSC and the O'Haras' complaint in equity. After hearing on March 6, 1989, our Court overruled DER's preliminary objections to the complaint in equity on April 26, 1989, docketed at No. 2711 C.D. 1988. Our Court ruled that the preliminary injunction issued by this Court on December 9, 1988, enjoining DER from enforcing its September 29, 1988, order, would remain in effect, preserving this Court's proper appellate jurisdiction until the issue in chief had been litigated or the preliminary injunction dissolved. (*O'Hara Sanitation Company, et. al. v. Department of Environmental Resources*, 125 Pa.Cmwlth. 441, 557 A.2d 453 (1989.))

2. Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. § 6018.101–6018.1003.

The O'Haras argue that, regardless of whether any of the activities constitute a violation of the Act, as owners of the property, they cannot be held liable for any such violations.

Our scope of review of a court of common pleas sitting in equity is limited. We must affirm if apparently reasonable grounds exist for the relief ordered and no erroneous or inapplicable rules of law are applied. *Jackson v. Hendrick,* 72 Pa.Cmwlth. 63, 456 A.2d 229 (1983).

■ DER's first argument is that OSC's operation fits within the definition of "processing" under Section 103 of the Act, 35 P.S. § 6018.103,[3] because the operation includes the reduction of bulk or volume of solid waste for the purpose of facilitating the bulk transfer of the materials off-site for disposal and converts waste materials for off-site reuse. DER argues that the Chancellor misinterpreted Section 103 of the Act and 25 Pa.Code § 75.1, which also defines "processing."

In its thorough review of the matter the Chancellor summarized:

'Processing' is a statutorily defined term in the Act. The entirety of the 'processing' definition with proper statutory construction and integration of all sections within the definition as an entirety defines 'processing' as *reduction* or *conversion* of solid waste. Since the company at best is sorting and recycling in a way that the materials are not reduced or converted by it, it is not 'processing' and needs no permit. Although the 'processing' definition enumerates 'transfer stations' and 'resource recovery' facilities, it is clear from the integration of all clauses and sections of the definition and by the Statutory Construction Act that those stations and facilities involved in 'processing' are those which involve re-

---

3. This section defines "processing" as:
Any technology used for the purpose of reducing the volume or bulk of municipal or residual waste or any technology used to convert part or all of such waste materials for off-site reuse. Processing facilities include but are not limited to transfer facilities, composting facilities, and resource recovery facilities.
35 P.S. § 6018.103.

duction or conversion of waste. This definition of 'processing' by the Court comports with the Statutory Construction Act, D.E.R.'s Rules and Regulations, legislative intent, legislative policy under the Act, D.E.R.'s practice and policy, the public interest, and ordinary logic and common sense. Most importantly, however, the company's recycling activities do not present any risk or threat to the environment, or any harm that can be properly regulated by the D.E.R. for the public health, safety and welfare. Further, no depositions, testimony or any other evidence has shown individual involvement or activities by individual defendants so as to make them subject to the D.E.R. requested remedies or liable herein in any way.

Opinion at 3–4 (emphasis in original).

The Chancellor applied the Act's definition of "processing" at Section 103 of the Act and stated: "D.E.R. has seized on the second sentence of this definition to the exclusion of the first sentence when clearly the second sentence is just a serial delineation and explanation of types of processing facilities that factually *might* qualify as processing facilities." (Opinion at 6 (emphasis in original).) The Chancellor concluded that D.E.R. did not prove that the recycling activity at the garage site involved reduction or conversion of waste within the first sentence of the statutory definition. (Opinion at 8.) Additionally, the Chancellor noted that 25 Pa.Code § 75.1, which defines "processing" as: "[a]ny technology applied for the purpose of reducing the bulk of solid waste materials or any technology designed to convert part or all of the waste materials for reuse," is interpretative. This regulation, promulgated by DER, makes no mention of compositing, transfer and resource recovery facilities. The Chancellor properly concluded that the general criteria of "processing" are reduction and conversion of solid waste.

DER's second argument is that the Act requires a permit for the operation of a solid waste transfer facility. DER argues that the garage site activities constitute a "transfer station" and therefore pursuant to Section 103 of the Act, they constitute "processing" facilities. At the time

of the hearing 25 Pa.Code § 75.1 defined a "transfer station" as "[a] supplemental transportation facility used as an adjunct to solid waste route collection vehicles. Such a facility may be fixed or mobile."[4] DER argues that the garage site is an adjunct to OSC's route collection vehicles which are used to pick-up, transport and drop refuse at the garage site, where the refuse is separated. DER argues the garage site serves as a central point for the accumulation of solid waste from which the waste is transferred in bulk to a landfill. The Chancellor addressed DER's argument:

> D.E.R. would urge the Court that a transfer facility would be one where refuse is dumped directly from one collection vehicle into a transfer trailer with no separation of materials and no technological handling of the materials except a dump from one vehicle to another. Such an interpretation is illogical, unreasonable and inane. It defies common sense and reasonable enforcement of legitimate laws and regulations in the public interest. To require further a permit for such an operation would be an overreaching of the legislative intent.

Opinion at 6.

One of the express legislative goals of the Act is to encourage the development of recycling and resource recovery to conserve resources. Section 102 of the Act, 35 P.S. § 6018.102(2). DER states that until the new municipal waste regulations were promulgated there was not an exemption for recycling activities[5] then restates its original premise that the activities conducted require a permit and should be considered "processing" and not recycling. We are not persuaded.

**4.** Subsequent to the Chancellor's decision DER's policy regarding transfer stations was codified. The new municipal waste regulations define "processing" facility as including transfer facilities regardless of whether there is reduction of volume or bulk. DER concedes that this appeal involves the correctness of the Chancellor's decision under the previous regulations, but asks this Court to take judicial notice of the new regulations as evidence of a consistent interpretation of "processing" by DER.

**5.** Title 25 Pa.Code § 271.101(b)(4) provides for a permit exemption for the processing of "source separated" recyclable material.

Finally, DER argues that the O'Haras should be held responsible for violations of the Act that occurred on their property.[6] We have concluded that the Act was not violated. Had we reached a different conclusion we would still affirm the Chancellor's order striking the O'Haras as defendants because DER relied only on the fact that the O'Haras owned the land at the time of the hearing. In doing so DER disregarded the requirements of the Act's provisions. DER offered no evidence that the O'Haras had any knowledge of the operations occurring on their land, that the operations did or may constitute dumping of solid waste or storage, treatment or processing of solid waste, or that the O'Haras had given OSC any permission to undertake such operations.

Accordingly, the order of the Chancellor is affirmed.

## ORDER

AND NOW, this 4th day of August, 1989, the order of the Court of Common Pleas of Montgomery County dated April 23, 1986, at No. 85–12670, is hereby affirmed.

---

6. DER cites Sections 501(a), 610(1) and (6), and 201(a) of the Act, 35 P.S. §§ 6018.501(a), 6018.610(1) and 6018.610(6) and 6018.201(a), as controlling.